SCHULER-OLSEN RANCHES, INC., A CORPORATION, APPELLEE,
v. MARGARET E. GARVIN, APPELLANT, IMPLEADED WITH
DONALD A. NELSON, APPELLEE.

250 N. W. 2d 906

Filed March 2, 1977. No. 40641.

Oscar A. Drake, for appellant.

Russell E. Lovell and Russell E. Lovell, II, for appellee Schuler-Olsen Ranches, Inc.

Atkins, Ferguson, Hahn & Coll, for appellee Nelson.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

The plaintiff, Schuler-Olsen Ranches, Inc. (hereinafter referred to as "Schuler"), commenced this action against the defendant, Margaret E. Garvin, and the defendant Donald A. Nelson, seeking a judgment declaring that it was the absolute owner of wheat growing on a ranch which it had purchased from Mrs. Garvin by reason of its purchase of the ranch, and that Nelson's lease on the ranch had expired and that Nelson was not entitled to the wheat. Schuler asked that the court

order Nelson to refrain from claiming ownership of the wheat and to execute appropriate instruments to convey sole title to the wheat to Schuler. In the alternative, should the court find ownership of the wheat to be in Nelson pursuant to his lease with Mrs. Garvin, Schuler asked for a judgment declaring that by virtue of the existence of Nelson's leasehold interest in the wheat, Mrs. Garvin breached the warranty of title provision in the warranty deed she conveyed to Schuler, and that Schuler is therefore entitled to a judgment against Garvin for the value of the tenant's share of the wheat.

In defense to Schuler's claim, the defendant Garvin contended that she had conveyed full and good title to Schuler as Nelson did not have a bona fide entitlement to the wheat since his leasehold interest had expired at the time of the conveyance. Defendant Nelson contended that he had a valid leasehold interest in the wheat on the ranch by virtue of his lease with Mrs. Garvin or by virtue of an oral lease by Mrs. Garvin extending the terms of the written lease until the crops were harvested.

The case was tried to the court. The court found that Mrs. Garvin purported to sell, by contract and warranty deed, the real estate involved here and all growing crops thereon to Schuler. The court found that the entire wheat crop on the ranch sold to Schuler by Mrs. Garvin was subject to a valid farm lease agreement between Mrs. Garvin and Nelson, and that, under the customary farm practices and under the farm lease agreement, Nelson is entitled to two-thirds of the wheat. The court further found that the Nelson leasehold interest in the wheat constituted a breach in the warranties in the deed and contract of sale between Mrs. Garvin and Schuler and that Schuler had been damaged in the sum of $7,729.20. The court rendered judgment in favor of Schuler, and against Mrs. Garvin in the sum of $7,729.20, and further rendered judgment

that Nelson is entitled to possession of the wheat as evidenced by the warehouse receipts held jointly between Schuler and Nelson. The defendant Garvin appeals the findings and judgment of the District Court. We affirm.

The factual background of this dispute is as follows: On October 1, 1973, Mrs. Garvin contracted to sell a ranch located in Morrill County, Nebraska, to Schuler. On March 1, 1974, the settlement date in the contract, Mrs. Garvin found it impossible to tender possession of the ranch to Schuler because Nelson was in possession by virtue of a written lease and he refused to redeliver possession of the premises to either Mrs. Garvin or Schuler. The reason for this refusal was that he had planted approximately 145 acres of winter wheat in the fall of 1973, to be harvested in July 1974, and that he claimed ownership of two-thirds of this wheat.

On March 8, 1974, Mrs. Garvin filed a complaint against Nelson in the county court of Morrill County for forcible detention seeking restitution of the leased premises. This matter was settled out of court by the parties prior to trial, by Nelson surrendering the premises, and by Garvin dismissing the complaint. On April 5, 1974, Mrs. Garvin's husband and her attorney drove to the ranch, inspected the premises, and padlocked the dwelling thereon. On April 8, 1974, the sale of the ranch was closed with Schuler paying the balance due on the purchase price and Mrs. Garvin delivering a warranty deed to Schuler. Immediately thereafter Schuler went into possession.

In July 1974, when Schuler commenced harvesting the wheat on the ranch, the wife of defendant Nelson stood in front of the combines to prevent the harvest. She demanded that they stop combining because the wheat belonged to the Nelsons. Schuler had law enforcement officers called in an attempt to remove the Nelsons, but the sheriff took no action. Thereafter, an agreement was worked out with the Nelsons by Schuler's at-

torney permitting the harvesting of the wheat. The harvested wheat was taken to a grain company in Bridgeport, Nebraska, and stored in the names of Schuler and Nelson. Since Nelson was only claiming two-thirds of the wheat, a tenant's share, Schuler was allowed to take the uncontested one-third of the wheat from storage and sell it. This litigation followed.

It is settled law in Nebraska that growing crops are a part of the real estate and pass to the grantee named in a deed of conveyance unless reserved. Dixon v. O'Connor, 180 Neb. 427, 143 N. W. 2d 364 (1966); Kobza v. Spath, 166 Neb. 623, 90 N. W. 2d 246 (1958); In re Estate of Andersen, 83 Neb. 8, 118 N. W. 1108 (1908). The deed given to Schuler by Mrs. Garvin contained no reservation of crops and thus the growing crops on the described real estate were conveyed to Schuler with the real estate.

The warranty deed given to Schuler by Mrs. Garvin contained the following provision: "And the grantor does hereby covenant with the grantee and with grantee's heirs and assigns that grantor is lawfully seised of said premises; that they are free from encumbrances (no exceptions); that grantor has good right and lawful authority to convey the same; and that grantor warrants and will defend the title to said premises against the lawful claims of all persons whomsoever." The words "no exceptions" were a typewritten addition to this printed clause in the deed.

The District Court found that the entire wheat crop was sold by Mrs. Garvin to Schuler subject to a valid farm lease between Mrs. Garvin and Nelson, and that under customary farm practices and the farm lease agreement, Nelson was entitled to a tenant's share of the wheat. "The judgment of a trial court in an action at law where the jury has been waived has the effect of a jury verdict and it will not be set aside on appeal unless clearly wrong." Mickelson & Mickelson Hay Contractors v. Christensen, *ante* p. 34, 246 N. W. 2d 655

(1976). See, also, Crane Co. v. Roberts Supply Co., 196 Neb. 67, 241 N. W. 2d 516 (1976). "It is not the province of this court in reviewing the record in an action at law to resolve conflicts in or weigh the evidence." H. D. Fager Oil Co., Inc. v. Vanice, 192 Neb. 789, 224 N. W. 2d 372 (1974). "The credibility of witnesses and the weight to be given their testimony are for the triers of fact." First Nat. Bank of Omaha v. First Cadco Corp., 189 Neb. 734, 205 N. W. 2d 115 (1973).

The record shows that on February 7, 1968, Nelson received a 3-year lease on Mrs. Garvin's ranch. On February 9, 1968, Oscar Drake, attorney for Mrs. Garvin, requested from Nelson an amendment to this lease to permit Mrs. Garvin's previous tenant to reenter the land and harvest the wheat crop he had planted the previous fall. Mr. Nelson testified that Mrs. Garvin visited the leased premises toward the end of the first lease, at which time he was planting wheat in the fall of 1970, to be harvested in 1971, after his lease was to terminate. On October 22, 1970, Nelson was given a new 3-year lease by Mrs. Garvin. This lease, which was to terminate on March 1, 1974, contained no provision concerning the possession of crops planted during the lease term which were to be harvested after the lease had terminated. There is no evidence in the record that Nelson was directed not to plant a wheat crop in the fall of 1973 by Mrs. Garvin.

As the 1970 lease was nearing its end, the Nelsons sought to purchase the ranch they were leasing from Mrs. Garvin. On September 14, 1973, the Nelsons drove to the Garvin residence in Kearney to discuss selling the ranch. Mr. and Mrs. Nelson testified that during these conversations they reminded the Garvins that if they did not get to purchase the ranch, two-thirds of the wheat and various improvements on the ranch belonged to them. Mr. Nelson testified that the Garvins responded, " 'Yes. We know that, Don. Yes, we know that.' " Mrs. Nelson testified they told the Garvins

that they had been busy planting wheat prior to the visit and that they had been rained out, and so had a chance to come down and visit.

There was testimony that in western Nebraska, wheat is customarily planted on a dry-land farming operation around the tenth of September of the year and harvested the following July. Mr. Arthur Erickson, a 60-year-old resident of Morrill County, and engaged in the banking business for over 50 years, testified that he had loaned out money on wheat during this period. He testified that based upon his experience the custom in this area was that the tenant harvests the wheat which he summer fallowed and planted, even though the lease expires. He testified that such wheat is the property of the tenant and that he loans out money on that basis.

On October 1, 1973, Mrs. Garvin sold the ranch to Schuler. Francis Garvin, Mrs. Garvin's husband, testified that at the September 14, 1973, meeting with the Nelsons there was no mention of wheat, nor had the wheat been previously discussed. He testified that the first time wheat was mentioned by Nelson was on October 2 or 3, when he asked him, " 'What about my wheat?' "; he testified that he replied, " 'I don't know anything about your wheat.' "

Mr. Schuler testified that at the time of the execution of the contract he was aware there was a 101-acre wheat allotment on the ranch. He testified that the wheat crop on the ranch was discussed during his negotiations with the Garvins. In making his decision on his offer, he stated that he allocated between $12,000 and $13,000 for the growing wheat.

There was sufficient evidence to support the District Court's finding that under his lease agreement with Mrs. Garvin, and under customary farm practices, Nelson had a valid interest in a tenant's share of the wheat crop which was growing on the Garvin ranch at the time it was sold to Schuler.

An outstanding leasehold interest is an encumbrance and is within a covenant against encumbrances. Albin v. Parmele, 73 Neb. 663, 103 N. W. 304 (1905); Grand Island Hotel Corp. v. Second Island Development Co., 191 Neb. 98, 214 N. W. 2d 253 (1974). A covenant in a deed that the premises are free from encumbrances, if untrue, is broken as soon as made, and the grantee's right of action against the grantor at once accrues thereon. Brass v. Vandecar, 70 Neb. 35, 96 N. W. 1035 (1903); Bryant v. Mosher, 96 Neb. 555, 148 N. W. 329 (1914).

The interest of Nelson in the wheat crop was an encumbrance upon the title conveyed to Schuler, and as such constituted a clear breach of Mrs. Garvin's warranty of full and good title, entitling Schuler to appropriate damages.

The District Court found that Schuler was entitled to damages against Mrs. Garvin in the amount of $7,729.20. The evidence showed that the July 1974 harvest reaped 3,392.16 bushels of wheat and that the expenses of harvesting incurred by Schuler and Nelson was $1,542.70. There was evidence that the cash price for wheat futures on July 10, 1974, varied from $4.25 to $4.30 per bushel; on July 11 from $4.22 to $4.31; and on July 12, from $4.37 to $4.52 per bushel. Emmett Smith, a grain dealer in Bridgeport, Nebraska, testified that he purchased No. 1 wheat, similar to that involved here, on July 10, 11, and 12, 1974, and paid between $4.05 and $4.20 per bushel. The District Court found that the value of the wheat at the time of harvest was $4.10 per bushel. The court determined Schuler's damages as follows: Two-thirds of the wheat harvested ($2/3 \times 3{,}392.16 = 2{,}261.44$ bushels) times $4.10 per bushel ($2{,}261.44 \times \$4.10 = \$9{,}271.90$) minus the harvesting expense, $\$9{,}271.90 - \$1{,}542.70 = \$7{,}729.20$). There is ample evidence to support the District Court's determination of damages sustained by Schuler as a result of Mrs. Garvin's breach of warranty.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.