DENNIS F. GOINGS ET AL., APPELLANTS AND
CROSS-APPELLEES, V. LARRY GERKEN ET AL., APPELLEES
AND CROSS-APPELLANTS.

263 N. W. 2d 655

Filed March 8, 1978. No. 41341.

James E. Schneider and James R. Nisley, for appellants.

Maupin, Dent, Kay, Satterfield, Girard & Scritsmier, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

SPENCER, J.

This is an action for specific performance of an option agreement for the purchase of real estate. Plaintiff-purchasers appeal from the judgment of the District Court which denied specific performance and ordered them to pay rent for the period of March 1, 1976, to February 28, 1977. Sellers cross-appeal from that portion of the judgment which permitted purchasers to reenter the property and harvest wheat planted in the fall of 1976. We affirm.

The property involved consists of 1,040 acres of pasture and farm ground in Chase County, Nebraska. Plaintiffs have leased the land from defendants since March 1971. When the 1971 lease expired March 1, 1972, it was renewed for a period of 3 years.

In November 1974, defendants listed the farm for sale with Stockmen's Realty, Inc. Plaintiffs executed a purchase agreement for the property on December 6, 1974, and deposited $5,000 as downpayment to be held in escrow. Defendants signed the acceptance on December 8, 1974.

The agreement called for a purchase price of $165,000 conditioned upon plaintiffs being able to secure a loan from the Farmers Home Administration.

The agreement provided: "If said loan is not approved within 60 days from date of acceptance hereof, this offer to be null and void, and the money paid herewith to be returned to me. Provided, however, that if processing of the application has not been completed by the lending agency within the above time, such time limit shall be automatically extended until the lending agency has in the normal course of its business advised either approval or rejection." The agreement provided that closing was to be on or before March 2, 1975.

Plaintiffs applied to the Farmers Home Administration for a loan. They received a form entitled "Option to purchase real property." This form agreement was duly executed by the parties. The terms contained in the option were essentially the same as those in the purchase agreement except for the addition of the following provision: "The offer herein shall remain irrevocable for a period of 2 months from the date hereof and shall remain in force thereafter until one (1) year from the date hereof unless earlier terminated by the Seller. The Seller may terminate this offer at any time after the 2 months' irrevocable period provided herein by giving to the Buyer ten (10) days' written notice of intention to terminate at the address of the Buyer. Acceptance of this option by the Buyer within ten (10) days after such notice is received by him shall constitute a valid acceptance of the option." It is this option plaintiffs seek to enforce herein. The document was dated December 8, 1974. Although it recited as consideration the sum of $5,000, it is clear plaintiffs paid nothing additional to the amount already held in escrow.

The parties agree, the FHA loan was approved in March 1975, but no funds were available at that time. They were advised the funds probably would be available by July 1, 1975. In April 1975, the parties executed a third agreement for the sale of the

property, denominated as a "Lease with option to purchase agreement." This agreement provided for the rental of the property from March 1, 1975, the expiration date of the previous lease, until February 28, 1976. In addition, plaintiffs were given the option to purchase the land by July 1, 1975, for the sum of $166,500, or $1,500 more than the price stipulated in the preceding agreement. In the event the option was exercised, the contract provided for the application of $7,000 cash rent payment toward the purchase price.

After the new agreement, plaintiffs asked Stockmen's Realty, Inc., to return the $5,000 held in escrow. Stockmen's Realty, Inc., informed them a release from both parties would be required before the money could be returned, and the effect would be to cancel the purchase agreement. Plaintiffs decided to leave the money in escrow where it remained through the time of trial.

On August 8, 1975, defendants listed the real estate for sale with a different realtor. That listing agreement, however, recited that defendants had a pending offer until October 2, 1975. The purpose of that stipulation was to relieve defendants from the payment of a commission to the new broker if the land was sold to the plaintiffs by that time.

On August 26, 1975, defendants notified the plaintiffs in writing the land had been listed for sale and if sold plaintiffs' tenancy would be terminated February 28, 1976. The new realtor also testified he visited plaintiffs at the farm in August and October of 1975, and they had no objections to the showing of the property to other prospective purchasers.

FHA funds finally became available in October 1975. On October 13, 1975, defendants were requested by Stockmen's Realty, Inc., to have the abstract sent to an attorney preparing a title opinion for the FHA. Defendants telephoned the Federal Land Bank and directed that the abstracts be forwarded.

On October 16, 1975, the FHA mailed plaintiffs a form entitled "Acceptance of option." Plaintiffs signed the form and it was sent to Stockmen's Realty, Inc., on October 24, 1975. This attempted exercise of the option was made within the 1-year time limit provided in the FHA option agreement. Defendants, who had received three higher offers the previous week, refused to sign the option or to honor the agreement to sell the property to plaintiffs. This action for specific performance ensued.

While plaintiff-purchasers set out 14 assignments of error, the essential issue herein is whether the FHA option agreement was rescinded by the "Lease with option to purchase" agreement executed in April 1975. We agree with the trial court, it was. The pertinent rule is stated in In re Estate of Wise, 144 Neb. 273, 13 N. W. 2d 146 (1944): "A contract complete in itself will be conclusively presumed to supersede and discharge another one made prior thereto between the same parties concerning the same subject matter, where the terms of the later are inconsistent with those of the former so that they cannot subsist together." It is obvious the parties made a new agreement. The second option agreement varied material terms of time and price, created a new agreement, and discharged the previous one. The fact that defendants may have been willing to honor the new agreement as late as October 2, 1975, is immaterial. No attempt was made to consummate the sale by that date.

Plaintiffs were still in possession of the property at the time of trial, although their lease had expired February 28, 1976. In the judgment entered January 27, 1977, the District Court ordered plaintiffs to surrender possession February 28, 1977, and to pay an additional year's rent. The judgment also provided that plaintiffs would be allowed to reenter the property after February 28, 1977, for the purpose of harvesting the winter wheat they had planted in the fall

of 1976. Defendants cross-appeal from the granting of the right of reentry.

Defendants rely on the general rule that a tenant who plants crops, knowing the terms of his lease will expire before they can be harvested, loses all his interest in the crops upon the termination of the lease. See Peterson v. Vak, 160 Neb. 450, 70 N. W. 2d 436 (1955). Plaintiffs direct our attention to the recent decision in Schuler-Olsen Ranches, Inc. v. Garvin, 197 Neb. 746, 250 N. W. 2d 906 (1977). On the facts in that case, we determined a tenant had an interest in a growing wheat crop following the termination of his lease even though the lease contained no provision to that effect. That case was affirmed on the fact the District Court found under the lease agreement, and under the evidence of customary farm practices, the tenant had a valid interest in a tenant's share of the wheat crop which was growing on the Garvin ranch at the time it was sold to Schuler-Olsen.

In the present case no evidence was presented as to customary farming practices. The record, however, does show that under the first two lease agreements, plaintiffs were required to do summer fallow work and the right to reenter to harvest the wheat was expressly reserved. The lease executed in April 1975, was silent on this matter. However, the evidence establishes plaintiffs continued to operate as they had under the previous agreement. They planted 250 acres of wheat in the fall of 1975, and devoted approximately 100 acres to summer fallow. Plaintiffs harvested the crop following the expiration of the 1975-76 lease. They remained in possession after its expiration. In the fall of 1976, they planted 160 acres of wheat and there is nothing in the record to indicate defendants in any way objected to the planting. The judgment covers the rent from March 1, 1976, to February 28, 1977.

Under the facts of this case, we sustain the find-

ings of the District Court in permitting plaintiffs to reenter the land to harvest the 160 acres of wheat.

The judgment of the District Court is affirmed.

AFFIRMED.