STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. STATE BANK OF OMAHA, E. H. LUIKART, RECEIVER, APPELLEE: FRANCES C. MORGAN, INTERVENER, APPELLANT.

FILED APRIL 11, 1935. No. 29228.

*Reed, Ramacciotti & Robinson* and *Crossman, Munger & Barton,* for appellant.

*F. C. Radke, Barlow Nye, W. A. Crossland* and *Hanley & O'Brien, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

GOOD, J.

Mrs. Frances C. Morgan, intervener, in her petition in intervention alleged that she was induced by fraudulent

representations, made to her by the president of the State Bank of Omaha, to purchase from it certain bonds. She sought rescission, tendered back the bonds, and asked that the amount paid by her for the bonds be declared held by the receiver in trust for and restored to her. The receiver in his answer pleaded the statute of limitations, and denied certain allegations in the petition. A reply put in issue the allegations of the answer. The trial resulted in a judgment for the receiver. Intervener has appealed.

The receiver now admits that the plea of the statute of limitations is unavailing.

Intervener in her petition alleged that, upon the recommendation of an employee of the State Bank of Omaha, she went to it for the purpose of consulting its officers and managers concerning an investment; that at the bank she met its president and manager and explained to him that she was a widow, without business experience and without knowledge of what were safe and reliable securities or the value of the same, and must rely upon the advice of others in making any investment in securities; that she had a small amount of money which she desired to invest in safe securities; that the president treated her very cordially and stated that he had been well acquainted with her husband in his lifetime and, in substance, that they were intimate friends, and pretended great sympathy for intervener because of the loss of her husband; that she was impressed with the apparent honesty and truthfulness of the statements made by the president; that he thereupon advised her to purchase from said bank two bonds, issued by the Keystone Water Works Corporation, a corporation organized under the laws of the state of Delaware; that he exhibited to intervener said bonds, then owned by the bank, each for $1,000, and stated to intervener that said bonds were perfectly sound and good and would be paid at their maturity; that the interest represented by the coupons attached to the bonds would be promptly paid when due; that said corporation was wealthy; that it had an enormous business throughout the United States; that its

income annually was in the millions; that its assets were much greater than its liabilities; "that it was perfectly solvent and that for an investment there were no securities to be purchased anywhere that were better." Intervener alleged that she had no knowledge of said corporation, but relied wholly upon the statements made by the bank's president, purchased the bonds and paid therefor $2,028.75, being the face value of the bonds plus accrued interest; that the bank's assets were thereby augmented to the extent of the amount then paid by her, which remained in the hands of the bank up to the time that it was placed in the hands of the receiver, and still remains in the hands of its receiver. She further alleged that the statements were false; that, in fact, the corporation issuing said bonds, shortly before or immediately after the transaction between intervener and the bank's president, was placed in the hands of a receiver, and, at the time said statements were made to intervener, said corporation was insolvent and the bonds possessed no market or other value.

The only defense tendered in the answer was the plea of the statute of limitations and the following specific denial: "Defendant says that as to the matters and things alleged in said petition, in so far as they purport to set out any conversation or agreement had between the intervener and Albert L. Schantz, this answering defendant has no information, and therefore denies the same."

In her own behalf intervener testified concerning the transaction wherein she purchased the bonds. Her evidence, in the main, tended to support the allegations of her petition as to what occurred between her and the bank's president. The bank's president was the only witness called for defendant. He admitted there was a transaction wherein bonds were sold to intervener, but testified that he could not recall the conversation had between him and intervener, and did not remember what was said. His evidence, therefore, is practically of no value.

Section 20-842, Comp. St. 1929, reads: "Every material allegation of the petition not controverted by the answer,

\* \* \* shall, for the purposes of the action, be taken as true; \* \* \* Allegations of value or of amount of damage shall not be considered as true by failure to controvert them." Under this statute it is apparent that every material allegation in the petition that is not controverted by the answer, except allegations of value or amount of damage, for the purposes of the action must be taken as true.

From the record it appears that intervener was a woman of inexperience in business matters; that she had no knowledge of securities and knew nothing of the bonds in question, or their value. She informed the president of the bank of her want of experience and lack of knowledge and that she relied on the officers of the bank to see to it that she obtained good security. The president of the bank assumed to act as her adviser and immediately recommended the purchase of two bonds. The record shows that these bonds, instead of being "absolutely gilt-edge, nothing better," were those issued by a corporation then insolvent; that such corporation was then, or shortly thereafter, in the hands of a receiver. From the admission, it is clear that the bonds were not of the grade and character that intervener desired, and which the bank's president represented them to be. We are compelled to conclude that intervener was imposed upon and was knowingly taken advantage of for the purpose of enriching the bank at her expense by selling her some of its bonds, which were of little or no value, and obtaining full par value therefor.

The receiver insists that there is insufficient evidence to show that there was a confidential or fiduciary relationship existing. It is unimportant whether there was a fiduciary relationship existing. It is sufficient, for the purposes of this action, that, through deliberate fraud practiced upon her, intervener was induced to purchase bonds that were not what they were represented to be.

A vendor of bonds, representing them to be good, sound securities—none better—makes a representation of a fact and is liable to the vendee of the bonds if the maker of the

bonds is insolvent at the time, and the vendee may rescind the contract and recover the purchase price. *Crane v. Elder,* 48 Kan. 259; *Corbett v. Gilbert,* 24 Ga. 454; *Alexander v. Dennis,* 9 Port. (Ala.) 174; *Olvey v. Jackson,* 106 Ind. 286; *Burr v. Willson,* 22 Minn. 206; *Snyder v. Findley,* 1 N. J. Law, 48.

In *State v. State Bank of Omaha,* 126 Neb. 343, this court held: "In equity, a guaranty and a pledge of collateral securing it may be canceled for fraud in the procuring of those instruments, and in that event the collateral may be restored to pledgor as trust property in the hands of the receiver of the pledgee after insolvency."

In *Foley v. Holtry,* 43 Neb. 133, it was held: "A person is justified in relying on a representation made to him in all cases where the representation is a positive statement of fact, and where an investigation would be required to discover the truth." In that case it was held that the injured party was entitled to rescind the contract. The decision in that case was reaffirmed in *Brucker v. Kairn,* 89 Neb. 274, and in that case it was held that false representations inducing the sale of personalty, if relied upon by the vendee, would support an action either for damages or rescission. Other decisions holding to the same tenor are *McCandless v. Greusel,* 103 Neb. 472, and *Olcott v. Bolton,* 50 Neb. 779.

In the instant case the bonds sold to intervener were not what they were represented to her to be. She relied upon the representations made and, under the law, she was entitled to rescind. She did rescind, tendered back the bonds, and demanded the return of her money, which the bank refused. She has since kept the tender good, and the bonds were tendered to the receiver in court.

The receiver contends that the value of the bonds was not shown and, therefore, the extent of intervener's injury was not shown. In an action to rescind, the extent of damage sustained is immaterial. Intervener was entitled to that for which she bargained; she was entitled to a first-class security. The evidence shows that the president

and manager of the bank told intervener that the bonds were gilt-edge, meaning that they were of the best class of securities on the market. She did not receive that for which she bargained. She was entitled to rescind regardless of the extent of her injury and damage. It does not require a Solomon to determine that bonds of an institution, which is insolvent and in the hands of a receiver, are not gilt-edge securities. The money intervener paid for the bonds still remains in the hands of the receiver. Under the facts disclosed, the receiver must be held to hold in trust the money paid by intervener to the bank, and she is entitled to preferential payment thereof, as for a trust fund, out of the assets of the bank in the hands of the receiver.

The judgment of the district court is reversed, and the cause remanded, with directions to enter a preferential judgment for a trust in favor of intervener for $2,028.75, plus interest thereon at 7 per cent. from March 5, 1930, to the date of entry of judgment, such judgment to bear interest at 6 per cent. from its date until paid.

REVERSED.