WESTERN PIPE AND SUPPLY, INC., APPELLEE, v. HEART MOUNTAIN OIL COMPANY, INC., ET AL., APPELLANTS, IMPLEADED WITH H. R. NEUSBAUM ET AL., APPELLEES.
140 N. W. 2d 813

Filed March 11, 1966. No. 36118.

Wright, Simmons & Hancock, for appellants.

Halcomb, O'Brien & Everson and Harry R. Meister, for appellees.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and BRODKEY, District Judge.

SPENCER, J.

This is an action brought by Western Pipe and Supply,

Inc., a corporation, hereinafter referred to as plaintiff, against Heart Mountain Oil Company, Inc., Fletcher G. Edwards, doing business as Heart Mountain Oil Company, and others, to foreclose an oil and gas lien filed against Heart Mountain Oil Company.

Four cross-petitioners, Robert L. Poundstone, who is also the president and sole stockholder of plaintiff and who will hereinafter be referred to as Poundstone, H. R. Neusbaum, hereinafter referred to as Neusbaum, Well Stimulation Service, Inc., and Bess Trucking Service, filed cross-petitions to foreclose their oil and gas liens against the same property. All of the liens are for labor performed and materials and supplies furnished pursuant to alleged oral contracts.

The trial court, in a pretrial order, defined the issues to be tried as follows: "Defendant Heart Mountain Oil Company denies that there was a specific contract for the supplying of material and labor, but concede that the plaintiff and the cross-petitioning defendants did some work upon the drill site and conferred some benefits, leaving the principal issues for trial, as to whether the work done by said plaintiff and cross-petitioners was necessary for the benefit of the drilling site and whether the items of charges were reasonable. The defendant, Heart Mountain Oil Company further contends that the cross-petitioner Poundstone failed to account for all of the oil produced from said well during the time that he was in charge of its operation. Defendant Heart Mountain further concedes that the particular items claimed by the plaintiff and the cross-petitioning defendants, both for material and time, were in fact supplied as pleaded. Parties further agree to check whether or not any items placed upon the drilling site were later returned for credit, and the amount of credit, if any, which should be allowed."

Based on those issues, the trial court found: (1) That Poundstone was an agent of and was appointed by Heart Mountain Oil Company, Inc., to order such work, serv-

ices, and materials as might be necessary; (2) that Heart Mountain Oil Company, Inc., through its president, had knowledge of the performance of said service and work immediately at or shortly after the time that said service, work, and materials were performed and supplied; that thereafter said corporation accepted all said work, service, and material, and affirmed and ratified the actions of Poundstone; and (3) that the plaintiff and each of the cross-petitioners were entitled to recover, but in three instances less was due than was claimed in the liens or the pleadings because of returns or credits.

The trial court entered judgment on October 27, 1964, in each instance for a principal amount found due plus interest thereon from a date 6 months from the date of the last item of the lien, as one total on which the court ordered interest to run thereafter.

Defendants have perfected an appeal to this court, and set out 16 specific assignments of error which will not be enumerated herein. The assignments of error considered pertinent will be referred to as they are discussed.

This appeal is perfected on behalf of defendants by counsel who took no part in the trial of the case. Defendants' brief raises some issues which may not be pertinent under the issues as defined by the pretrial limitation set out above. In Long v. Magnolia Petroleum Co., 166 Neb. 410, 89 N. W. 2d 245, this court held: "The purpose of a pretrial conference is to simplify the issues; amend the pleadings, when necessary; and avoid unnecessary proof of facts at the trial.

"The participants in a pretrial conference must adhere to the spirit of that procedure and are held to have waived questions not there presented.

"Modification of a pretrial order may be had at the trial to prevent manifest injustice, but the modification should be by direction and not by indirection. That is, modification must be attended by a degree of directness and formality such as is appropriate to a court order of

such magnitude that from the time of its entry it controls the subsequent course of the action.

"The subsequent course of an action is controlled by the agreements made at pretrial conference so long as they remain unmodified and that would be true on appeal."

As we interpret the pretrial order, there were three principal issues to be determined: (1) Whether the work done was necessary and for the benefit of the drilling site; (2) whether the items of charges were reasonable; and (3) did the cross-petitioner Poundstone account for all of the oil produced?

After trial, the court found Poundstone to be the agent of Heart Mountain Oil Company, Inc., and that said corporation accepted all of the work and affirmed and ratified Poundstone's actions; that all of the charges were reasonable; and that an accounting was made for all oil produced under Poundstone's direction. We will consider defendants' assignments of error within the ambit of these findings.

While the pretrial order does not make agency an issue, the case appears to have been tried upon that theory, and the trial court makes a specific finding on agency. There is no dispute Poundstone, a consulting engineer and geologist, was hired by Fletcher G. Edwards, president and general manager of Heart Mountain Oil Company, Inc., and a general partner in Heart Mountain Oil Company, to finish an oil well. In the words of Edwards, it was to bring "it up to the point of initial production." The well, which is referred to in the record as the Muhr well, had previously been abandoned and was to be reworked. It was to be developed by using second-hand equipment acquired by the well owners but still in place on a well in another location, referred to as the Huffman well. Edwards testified that Poundstone was employed to put the well on a permanent pumping basis.

The services covered in this action involve the dis-

mantling of the equipment at the Huffman well and moving it to and installing it in the Muhr well. After Poundstone was hired, he went with Edwards to the office of Neusbaum and in Edwards' presence requested a bid on the work to be done. A bid was presented by Neusbaum to Poundstone the same day. Neusbaum was thereafter hired by Poundstone to do certain portions of the work, involving the dismantling of the equipment at the Huffman well site and installing it at the Muhr site. Poundstone testified that he also contacted other contracting companies, seeking bids, and that the Neusbaum bid was the lowest.

Lee Gustin, a partner in Bess Trucking Service, which actually moved the equipment, testified to a conversation with both Edwards and Poundstone, in which Edwards verbally contracted for his services. Gustin and Poundstone both testified that Edwards assured them that the tanks to be moved had been cleaned and were ready to be moved.

The dealings with cross-petitioner, Well Stimulation Service, were all conducted by Poundstone, and resulted because the tanks had not been cleaned and oil was congealed therein which had to be removed before the tanks could be moved. The attempts on the part of Well Stimulation Service to remove the congealed oil were unsuccessful, but there is competent testimony that the methods employed by Well Stimulation Service were customary and proper but were ineffectual because of ice in the congealed oil. It was necessary to melt the ice and scoop the congealed oil out with shovels.

It was Edwards' testimony that Poundstone was not authorized to contract for any services or labor, but that he was only authorized to secure bids and to submit these bids to Edwards. It is also Edwards' contention that in each instance the bids were to be what is known in the trade as turn-key bids, or a firm contract price for each job undertaken. This is denied by Poundstone and all of the cross-petitioners.

We do not believe any useful purpose will be served by detailing the evidence adduced on the issue of agency herein. Suffice it to say there is conflict in the evidence. The trial court from his observation of the witnesses was in a better position than we are to pass on their credibility. We deem the following rule to be applicable: "When the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." Arnold v. Huenefeld, 176 Neb. 683, 127 N. W. 2d 196.

Defendants argue that evidence of the acts or declarations of an agent concerning the existence or extent of his authority, is not admissible against the principal to prove the existence of agency. Rodine v. Iowa Home Mutual Cas. Co., 171 Neb. 263, 106 N. W. 2d 391. As we interpret the evidence herein, it is based on apparent or ostensible authority or agency in Poundstone to bind the defendants. A principal may be liable for the apparent or ostensible authority or agency with which he clothes an alleged agent. See Rodine v. Iowa Home Mutual Cas. Co., *supra*.

We determine that the conduct and actions of Edwards were a sufficient manifestation of authority to clothe Poundstone with apparent or ostensible authority for which the defendants are liable.

The defendants devote several pages of their brief to the issue of ratification. While ratification is not pleaded and is not specifically covered by the pretrial order, the trial court did make a specific finding that Heart Mountain Oil Company, Inc., acting by and through its president, Edwards, affirmed and ratified the actions of Poundstone. We do not deem it necessary to discuss the issue of ratification. While we believe the record sufficient to sustain the finding, the determination that Poundstone was the agent of Heart Mountain Oil Com-

pany, Inc., on the record before us, makes a discussion of the question of ratification immaterial. There is no dispute that defendants accepted the services and the materials. The dispute centers on the necessity for certain services, the quality and use of certain materials, and the reasonableness of the charges. We find that the determinations of the trial court in these respects can be sustained on the record.

Defendants assign as error the finding that the oil and gas liens involved were properly filed and subject to foreclosure. Defendants' objections are as follows: Plaintiff's lien does not allege the dates on which the materials were furnished, but shows only invoice dates. It lists the name of the owner of the leasehold interest as Heart Mountain Oil Company and does not set out the owners of the leasehold interest as described in the pleading. Finally, the lien statement alleges plaintiff "sold and delivered material and supplies under a continuing oral contract" whereas one of the invoices was solely for services. The defects suggested in the liens of the cross-petitioners are of the same nature. When the liens were offered in evidence, in each instance the attorney for the defendants said "No objection."

It is defendants' contention that if the liens were not properly filed, this would go to jurisdiction, and that jurisdiction can be raised at any stage of the proceedings under section 25-808, R. R. S. 1943.

Section 57-811, R. R. S. 1943, provides: "Every person, claiming a lien under the provisions of sections 57-801 to 57-820, shall file in the office of the county clerk for the county in which the land identified with the leasehold interest, or pipe line, or some part thereof, is situated, a statement verified by an affidavit. This statement shall set forth the amount claimed and the items thereof, the dates on which labor was performed or material or services furnished, the name of the owner or owners of the leasehold interest or pipe line, if known, the name of the claimant and his mailing address, a

description of the leasehold interest or pipe line, and if the claimant be a claimant under the provisions of section 57-804, the name of the person for whom the labor was immediately performed or the material or services were immediately furnished. The statement of lien must be filed within four months after the date on which the claimant's labor was last performed or his material or services were last furnished under a single contract as provided for in section 57-810."

The exhibits attached to and made a part of the lien affidavits show what part of the claim is for materials and supplies and what part is for labor and services. The attachments to the Neusbaum and Bess Trucking Service liens give the date the material was furnished or labor performed, as well as the invoice date. The Well Stimulation Service statements bear an invoice date which from the evidence is apparently the day the service was rendered or materials furnished. The delivery or work tickets in evidence substantiate this fact. The affidavit of Poundstone contains the following: "That said material, supplies and labor were furnished or performed immediately prior to and including the 16th day of April, 1963, as set forth in copies of invoices attached hereto." The invoices are dated February 28, March 31, and April 16, 1963. The affidavit filed by the plaintiff contains the same statement as the Poundstone affidavit except that the date listed is the 22nd day of February 1963. The invoices are dated January 28, February 4, and February 22, 1963. It is evident to us that there has been a substantial compliance with the statute in listing the dates the services were rendered or the materials were furnished. There is nothing in the record which would in any way indicate otherwise, and the liens were sufficently specific to inform any interested person as to the dates involved.

The liens herein are filed against the Heart Mountain Oil Company rather than against the Heart Mountain Oil Company, Inc. When Edwards was called to the

witness stand by the defendants and was asked by whom he was employed, his answer was Heart Mountain Oil Company. Throughout his testimony the reference is to Heart Mountain Oil Company. The answer of the defendants admitted that Heart Mountain Oil Company, Inc., Barbara J. Edwards, and Fletcher G. Edwards, doing business as Heart Mountain Oil Company, and others, were the owners of the leasehold estate, including working interests and overriding royalty interests. The record does not show the exact ownership of the respective interests. It is to be noted that section 57-811, R. R. S. 1943, provides that the names of the owners of the leasehold interest be set forth *if known.*

There is no question the leasehold was handled exclusively by Edwards, who was the president of Heart Mountain Oil Company, Inc., and a general partner in Heart Mountain Oil Company. To draw a distinction as to exactly when he may have taken off one hat and donned another in an operation of this nature was to say the least short of impossible.

Defendants also argue that section 57-802, R. R. S. 1943, requires that the liens arise "under contract with the owner of any leasehold interest." We believe that the trial court drew the correct conclusion that Edwards was directing the operation in his capacity as president of Heart Mountain Oil Company, Inc., for all of the defendants, and that the contracts were made while he was acting in that capacity.

The purpose of section 57-811, R. R. S. 1943, is to furnish interested parties with sufficient information to enable them to understand the nature of the lien claimed. There was no problem in this regard in the instant case. Although defendants argue that some of the work was unnecessary and accomplished nothing, this is a matter of opinion, and has been decided contrary to the position of the defendants. We determine that there was a substantial compliance with the provisions of section 57-811,

R. R. S. 1943, and there is no merit to the defendants' assignments of error in that regard.

Defendants contend that plaintiff and cross-petitioners failed to sustain the burden to make prima facie proof that no proceedings at law had been had for the recovery of the indebtedness. They rely on Bankers Life Co. v. Peterson, 178 Neb. 205, 132 N. W. 2d 377, in which we held that the burden is on the petitioner in a foreclosure action to make prima facie proof of a controverted allegation that no proceedings at law have been had for the recovery of the indebtedness. The difficulty with defendants' position herein is that the allegation was not controverted. Defendants' answer consisted of admissions and specific denials. It does not contain, nor can any provision therein be construed as a general denial. Consequently, the allegation "that no action has heretofore been instituted * * * to recover the indebtedness above set forth" stands uncontroverted. On the theory on which this case was tried, we call attention to section 25-842, R. R. S. 1943, which provides, so far as material herein: "Every material allegation of the petition not controverted by the answer * * * shall, for the purposes of the action, be taken as true; * * *." See, also, State ex rel. Sorensen v. State Bank of Omaha, 128 Neb. 705, 260 N. W. 195.

Defendants assign as error the computation of interest by the trial court. It is apparent that the trial court proceeded under section 45-104, R. R. S. 1943. In Heusser v. McAtee, 151 Neb. 828, 39 N. W. 2d 802, we said: "Where from the verdict and pleadings it appears that if plaintiff is entitled to recover at all he is entitled to recover interest, the court could make the computation and include such interest in the judgment." Defendants' assignment of error in this respect is without merit.

There being no error in the record sufficient to require a reversal, the judgment herein is affirmed.

AFFIRMED.