ELSIE HAGERBAUMER, APPELLANT, V.
HAGERBAUMER BROTHERS, INC., APPELLEE.

305 N.W.2d 4

Filed April 24, 1981. No. 43245.

James M. Davis of Dolan, Dinsmore & Davis for appellant.

Neil W. Schilke of Sidner, Svoboda, Schilke, Wiseman & Thomsen for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

WHITE, J.

This is an action by a stockholder in a closely held family corporation to compel the defendant-appellee corporation to purchase 666 shares of stock in the appellee corporation in accordance with a Buy and Sell Agreement executed October 22, 1976, between the corporation and all stockholders. The trial court determined that the agreement of October 22, 1976, had been rescinded by an agreement of July 1977 and that there was no duty on the part of the corporation to purchase the shares from the appellant, and therefore denied relief. We reverse and remand.

The original stockholders of the appellee, Hagerbaumer Brothers, Inc., were Obert and Elsie Hager-

baumer (Elsie being appellant herein) and their three children, Ardean, Gorlyn, and Leewane. The corporation operated farms and carried on extensive cattle feeding operations in Washington County, Nebraska. Although generally successful in the farming operation, in the early 1970's the company had experienced severe financial reverses because of a downturn in the cattle market. The history of the relationship between the stockholder-parents and the stockholder-sons, and among one another, has been stormy and, at times, violent. There are issues raised by the appellant in her petition suggesting that the agreement of 1977 was compelled by duress and fraud practiced on her, but as these issues are not necessary for a determination of the case, they will not here be considered.

The 1976 agreement entitled "Buy And Sell Agreement" has as its declaration of purpose: "[T]o make provision for the future disposition of the shares of capital stock of the Corporation, and to provide that such shares shall be transferable only upon compliance with the terms hereof . . . ."Appellant attempted to have the corporation redeem her stock under the following paragraph: "3. Sale During Life. A Stockholder desiring, during his lifetime, to sell or otherwise encumber his stock shall first give the other stockholders at least ninety days written notice by registered or certified mail of his intention to sell or dispose of any part or all of his stock. The remaining stockholders shall have the exclusive right and option during said ninety day period to purchase said stock. In the event that the Stockholders do not exercise this right, the Corporation must purchase all such shares of stock upon these terms and conditions: . . . ." The record is clear that appellant complied with all notice provisions and that both the remaining stockholders and the corporation refused to purchase the shares. Upon the corporation's refusal to purchase the shares, appellant brought this action.

The occasion for the execution of the 1977 agreement was the difficulties, both financial and personal, which arose between the brothers in the operation of the farm corporation. Their father, Obert, had died in April 1977 and the three brothers were unable to agree with respect to assignment of duties and certain benefits to Leewane by way of housing and automobiles; and, as a result, negotiations were commenced, at the request of a financial institution which had lent considerable money to the corporation to finance the cattle operation, to settle the status as to who should operate the corporation. The agreement principally provided for the deposit in escrow and the retirement of Leewane's stock and the agreement by the corporation to buy the stock over a period of years at specified yearly payments with interest. However, the agreement contained the following provision: "9. This agreement for the purchase of the stock of Leewane must of necessity comply with the request and requirements of the Arlington State Bank from which the necessary financing must be obtained. The bank understandably recognizes that it must work with the operators of the company for some years and as a community bank is interested in assuring that the operaion [sic] is successful and for the benefit of all parties concerned. It is contemplated that Gorlyn and Ardean will do the work for the corporation both as to physical labor and management and that any increase in value of the corporation will result substantially from their efforts and similarly a failure of the company will result in Ardean and Gorlyn taking the bulk of the loss by reason of their investment of time, labor and effort in the company. Therefore, it is important that the disposition of the remaining outstanding 666 shares of stock held by Elsie be determined. In order to obtain the necessary financing and secure fairness for all parties concerned, Elsie agrees that she will not at any time dispose of her shares of stock by gift, or bequest in

such manner that Ardean and Gorlyn would each receive less than one-third of such shares. It is contemplated that the remaining one-third of her shares would pass to Leewane but inasmuch as he will not be an active member of the company there is no binding agreement as to this one-third. It is further agreed that any such transfers will be made simultaneously so that at any given time Gorlyn and Ardean will each receive one-third of any shares transferred by Elsie. *This agreement does not preclude the sale of shares of stock by Elsie but in the event of sale other than as redemption by the Company Gorlyn and Ardean shall each have the right to purchase one-third of any shares of stock offered for sale by Elsie on the terms and conditions of any such bona-fide offer of sale and Elsie shall give Ardean and Gorlyn at least 30 days written notice of the terms and conditions of any proposal for the purchase of such stock and Gorlyn and Ardean will have 30 days after receipt of such notice to advise Elsie in writing as to whether or not the wish to exercise their option to purchase."* (Emphasis supplied.)

Paragraph 11, that part referred to by the appellee corporation and the trial court in the determination that the 1977 agreement rescinded the 1976 agreement, provides as follows: "Each party hereto by entering into this agreement releases each other party and the Company from any and all claims for liability compensation, reimbursement or other claim of whatever nature, whether now known or unknown and whether now liquidated or unliquidated." The 1977 contract was not executed on behalf of the corporation.

It was the obvious purpose of both the first and second agreements that outsiders not be permitted to own stock in the appellee corporation. In their testimony, Gorlyn and Ardean testified that they opposed the purchase of the stock by the corporation for the reason that it would deplete seriously the working capital of the corporation and that the future of the corporation

would therefore be in doubt; and further, if the proceeds from the sale of the shares of Elsie were paid over to her, she would then be free to leave the money to Leewane or to do with it as she chose instead of distributing the value of her stock one-third each to Leewane, Ardean, and Gorlyn. It is obvious from a comparison of the plain language of paragraph 3 of the original Buy and Sell Agreement and paragraph 9 of the 1977 stock-purchase agreement that the two do not conflict. Indeed, the right of Elsie to sell the stock is reaffirmed; the right of the other three then existing stockholders to purchase is affirmed; and any purported cancellation of the right of Elsie to compel the corporation to purchase the stock in the event of refusal by the remaining shareholders is simply not mentioned.

In fact, paragraph 9 of the 1977 agreement even contemplates redemption by the company by providing that the right of Ardean and Gorlyn to purchase one-third each of Elsie's shares only applies to sales other than as redemption by the company.

A subsequent contract which does not completely cover the same subject matter of a prior agreement and does not contain terms inconsistent with the former contract so that the two cannot stand together does not supersede or substitute for the earlier contract and become the only agreement of the parties. *Walsh v. Lunney*, 75 Neb. 337, 106 N.W. 447 (1905). *Accord, Cooperative Refinery Ass'n v. Consumers Public Power D.*, 190 F.2d 852 (8th Cir. 1951).

The rule has also been stated that: "'A contract complete in itself will be conclusively presumed to supersede and discharge another one made prior thereto between the same parties concerning the same subject matter, *where the terms of the later are inconsistent with those of the former, so that they cannot subsist together.*'" (Emphasis supplied.) *In re Estate of Wise*, 144 Neb. 273, 282, 13 N.W.2d 146, 152 (1944); *Goings v. Gerken*, 200 Neb. 247, 263 N.W.2d

655 (1978); *Price v. Platte Valley Public Power and Irrigation District*, 139 Neb. 787, 298 N.W. 746 (1941).

An examination of the two contracts does not disclose inconsistencies sufficient for the presumption to obtain. The subject of the possible sale of the stock to the corporation in the event of a refusal of the remaining stockholders to purchase is referred to, as above noted, in the 1977 agreement. It cannot be said that this provision is inconsistent with the provision of the earlier contract which compelled the corporation to buy in the event of such refusal. The judgment of the trial court was therefore incorrect, and we reverse and remand.

There are other issues raised in the proceedings below that were not decided by the trial court or discussed by this court, i.e., whether or not under the terms of the agreement there was a binding agreement on Elsie to distribute the shares held by her in the corporation to each of her three sons, one-third each, and that a resulting trust should therefore be imposed on the proceeds. These matters will necessarily be decided by the trial court on remand.

REVERSED AND REMANDED WITH DIRECTIONS.