CLINTON HASENAUER ET AL., APPELLANTS, V. OLIVER L. DURBIN ET AL., APPELLEES.
346 N.W.2d 695

Filed March 9, 1984. No. 83-002.

Jess C. Nielsen of Nielsen & Birch, for appellants.

Baskins & Rowlands, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Clinton and Mary Hasenauer and Albert and Arnella Corliss filed suit against Oliver and Mildred Durbin in the Lincoln County District Court, namely, a suit seeking specific performance of an agreement to convey real estate, and damages. Summary judgment was granted to Durbins, and the suit was dismissed by the court. We affirm.

Hasenauers lived at Wallace, Nebraska. Corlisses lived at Yuma, Colorado, where Albert Corliss was a farmer and rancher, and a realtor licensed in Colorado. Albert Corliss is the brother of Mary Hasenauer. Oliver Durbin is a retired farmer living in North Platte.

On March 14, 1979, the personal representative of the estate of Berniece A. Moore, deceased, held a real estate auction at the Lincoln County Courthouse to sell estate land consisting of approximately 1,040 acres of pasture.

At the auction a mutual friend introduced Oliver Durbin to Clinton Hasenauer and Albert Corliss. As bidding progressed at the auction and while Durbins were bidding on the entire tract of 1,040 acres, Hasenauer and Corliss indicated their interest in acquiring the south half of Section 27, a part of the tract on which Durbins were bidding. Hasenauer and Corliss claim that an agreement was reached with Oliver Durbin during the auction, namely, Hasenauer and Corliss would receive the south half of Section 27 for a payment of $301.50 per acre for the half-section, if Durbins were successful bidders on the entire tract. Durbins were high bidders, and

at the conclusion of the auction paid a downpayment to the estate, 15 percent of the Durbin bid.

Shortly after the auction on March 14, Durbins, Hasenauers, and Corlisses went to Durbins' residence, where Oliver Durbin signed and delivered to Hasenauers the following receipt:

"3-14-79

$7,236

Received of Clinton or Mary Hasenauer Seven Thousand Two Hundred Thirty Six & no/100 Dollars. 15% of South 160 acres of Sec. 27-9-33. Balance of $41,004.00 on this 160 acres when papers are finished by Att Don Pederson. All paper, revenue stamps and split abstract cost at expense of buyer.

phone 532-0874          /s/ O. L. Durbin

Buyer /s/ Clinton Hasenauer     601 South Elm

/s/ Mary L. Hasenauer          No. Platte, Nebr."

Oliver Durbin contemporaneously gave the same form of receipt to Albert and Arnella Corliss. In exchange for the receipts, Oliver Durbin received separate checks from Hasenauers and Corlisses. Each of the two checks was dated March 14, 1979, and was in the amount of $7,236, as indicated by the receipts.

There was no contact involving Durbins, Hasenauers, and Corlisses until March 20 when the parties met at an attorney's office in North Platte. Early on the morning of March 20, Oliver Durbin gave the attorney some information concerning the Hasenauer-Corliss transaction. When the parties arrived at the attorney's office at midmorning on March 20, a memorandum prepared by the attorney was submitted for inspection by Durbins, Hasenauers, and Corlisses. Among the terms of sale contained in this initial memorandum was a "buy-back" provision, namely, before there was a sale of the south half of Section 27 during a period of 15 years from March 14, 1979, the land would first be offered to Durbins at $301.50 per acre. In the course of the meeting on March 20, Durbins also demanded "water protection," that is, irrigation on the south half of Sec-

tion 27 would be stopped pending determination of the cause of any water deficiency in stock or domestic wells on Durbin land adjacent to the half section in question. Later in the course of the morning on March 20, a second memorandum was prepared and signed by each of the parties before a notary public. In addition to the provision for "water protection," as proposed by Durbins, the second memorandum contained a "buy-back" arrangement existing for a period of 10 years from March 14, 1979, at $301.50 per acre, and a reservation of a 30-foot right-of-way across the Hasenauer-Corliss half section to Durbins' land lying north of the half section. There is no question that the parties read, signed, and acknowledged this second memorandum on March 20.

On April 10 the personal representative of the Moore estate delivered a deed to Oliver Durbin. On April 23 Hasenauers and Corlisses met with Oliver Durbin in the attorney's office in North Platte. Hasenauers and Corlisses had sought financing from the Federal Land Bank of North Platte to buy the half section. However, when a representative of the federal land bank noticed the "buy-back" provision in the agreement of March 20, he indicated that any federal land bank loan to Hasenauers and Corlisses would have to be "restructured," that is, Hasenauers and Corlisses would have to provide additional security for the federal land bank loan. Eventually, additional security was supplied and the loan was approved.

On April 27 the attorney placed a telephone call to Albert Corliss in Colorado. In that telephone conversation Corliss refused to go through with the March 20 agreement due to the "water reservation." Shortly after and on the same day as the attorney's telephone call to Albert Corliss, Hasenauer also refused to complete the transaction in view of Corliss' refusal to carry out the agreement of March 20.

Durbins never gave a deed to Corlisses or Hasenauers, and on June 5 Durbins returned the

March 14 checks to Hasenauers and Corlisses. Accompanying return of the checks was a request by Durbins that any personal property of Hasenauers or Corlisses be removed from the half section. Durbins gave Hasenauers and Corlisses until May 28, 1979, to perform the agreement of March 20, 1979.

The next event concerning the real estate transaction occurred on June 13, 1980, when Hasenauers and Corlisses sued Durbins for specific performance based on the agreement claimed to have been achieved on March 14, and also sought damages for Durbins' failure to convey the real estate. In their answer to the petition Durbins alleged the written agreement signed by the parties on March 20, 1979, and recited that any prior agreement between the parties was "merged" into the March 20 agreement which was the "sole agreement" of the parties. In their reply Hasenauers and Corlisses did not raise any affirmative defense to the agreement of March 20.

At a pretrial conference on June 21, 1982, the trial court determined that the nature of the action was specific performance and that the issues were: (1) Whether there was an agreement between the parties for acquisition of the real estate; (2) The terms of such agreement; (3) Whether the agreement of March 20 was a complete written agreement superseding any agreement existing before March 20; and (4) Whether there was consideration for the agreement of March 20. None of the parties objected to the pretrial conference order.

Durbins, on June 28, moved for summary judgment. On October 28 the trial court found there were no issues of material fact involved in the litigation; that the written contract of March 20 was undisputed; that any agreement prior to March 20 was executory; that no new consideration was required to amend or merge any prior agreement in relation to the agreement of March 20; and that, in any event, changes made by the written agreement of

March 20 constituted new consideration to support the March 20 agreement of the parties. After granting summary judgment to the defendants, the trial court dismissed the plaintiffs' action.

As assigned errors in their appeal, Hasenauers and Corlisses claim: (1) The March 20 agreement was not controlling between the parties; (2) Absence of new consideration for the March 20 agreement; (3) Fraud by Durbins caused loss of bargained benefits to Hasenauers and Corlisses; (4) The terms of the March 20 agreement were unconscionable; (5) The March 14 agreement should have been enforced; and (6) An issue of material fact existed precluding a summary judgment.

The purpose of a pretrial conference is to simplify the issues, to amend pleadings when necessary, and to avoid unnecessary proof of facts at trial. To that end litigants must adhere to the spirit of the procedure and are bound by the pretrial order to which no exception has been taken. See, *Tober v. Hampton*, 178 Neb. 858, 136 N.W.2d 194 (1965); *Western Pipe & Supply, Inc. v. Heart Mountain Oil Co., Inc.*, 179 Neb. 858, 140 N.W.2d 813 (1966). The only issues emerging from the pretrial conference related to the effect of the March 20 agreement, the availability of specific performance, and the question of consideration for the March 20 agreement. Before their appeal to this court, Hasenauers and Corlisses have never raised any affirmative defense to the March 20 agreement or to the effect of that contract. Under the circumstances presented we will consider only the issues formulated at the pretrial conference and will not consider issues not presented to and disposed of by the trial court. "The rule is well.settled that questions not presented or passed upon by the trial court will not be considered by this court on appeal." *Guynan v. Guynan*, 208 Neb. 775, 781, 305 N.W.2d 882, 886 (1981). See, also, *Edquist v. Commercial Sav. & Loan Assn.*, 191 Neb. 618, 217 N.W.2d 82 (1974).

"Where a later contract is entered into between the same parties in relation to the same subject matter as the earlier one, and fully covers the terms of the earlier one, the later contract supersedes the earlier one which is deemed merged in it . . . ." 17A C.J.S. *Contracts* § 382 at 452 (1963). See, also, *Vaughn & Co. v. Saul*, 143 Ga. App. 74, 237 S.E.2d 622 (1977).

"A contract complete in itself will be conclusively presumed to supersede and discharge another one made prior thereto between the same parties concerning the same subject matter where the terms of the latter are inconsistent with those of the former so that they cannot subsist together." *De-Filipps v. Skinner*, 211 Neb. 801, 803-04, 320 N.W.2d 737, 738-39 (1982). See, also, *Price v. Platte Valley Public Power and Irrigation District*, 139 Neb. 787, 298 N.W. 746 (1941); *Hagerbaumer v. Hagerbaumer Brothers, Inc.*, 208 Neb. 613, 305 N.W.2d 4 (1981); *Goings v. Gerken*, 200 Neb. 247, 263 N.W.2d 655 (1978); 6 A. Corbin, Corbin on Contracts § 1293 (1962).

" 'Any or all parts of a transaction prior to or contemporaneous with a writing intended to record them finally are superseded and made legally ineffective by the writing.' " (Emphasis omitted.) *Loving Co. v. Latham*, 20 N.C. App. 318, 329, 201 S.E.2d 516, 523 (1974). See, also, *South Texas Land Co. v. Sorensen*, 199 Iowa 699, 202 N.W. 552 (1925).

" 'There is a sufficient consideration for a promise if there is any benefit to the promisor or any detriment to the promisee. A benefit need not necessarily accrue to the promisor if a detriment to the promisee is present, and there is a consideration if the promisee does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether or not there is any actual loss or detriment to him or actual benefit to the promisor.' " *Phelps v. Blome*, 150 Neb. 547, 555, 35 N.W.2d 93, 97 (1948).

Regarding any question about consideration to support the March 20 contract, Hasenauers and Corlisses have painted themselves into a legal corner. The existence of the March 20 contract is undisputed. If the events of March 14 culminated in an agreement of the parties, then all rights and benefits under the March 14 agreement were surrendered when the parties entered the subsequent agreement of March 20. The new promises embodied in the March 20 agreement and the relinquishment or forbearance of any antecedent rights resulting from the March 14 agreement supplied consideration to support the new contract entered on March 20, 1979. See, also, *In re Estate of Griswold*, 113 Neb. 256, 202 N.W. 609 (1925); *Asmus v. Longenecker*, 131 Neb. 608, 269 N.W. 117 (1936).

Whatever agreement may have been achieved by the parties before March 20 or may have resulted from the encounter on March 14, it is beyond any question that the written contract of March 20 superseded and discharged any prior agreement involving Durbins, Hasenauers, and Corlisses. The terms of the March 20 agreement of the parties control and dispose of the issues in this case because there is no effective and enforceable agreement of the parties except the written contract of March 20, which Hasenauers and Corlisses have repudiated.

Based on the pleadings, issues, and relevant evidence presented, there was no genuine issue of any material fact concerning the contractual relationship and responsibilities of Durbins, Hasenauers, and Corlisses with respect to the real estate transaction. Durbins were entitled to a favorable judgment as a matter of law. Cf., *Reifschneider v. Nebraska Methodist Hospital*, 212 Neb. 91, 321 N.W.2d 445 (1982); *Manzer v. Pentico*, 209 Neb. 364, 307 N.W.2d 812 (1981). The judgment of the district court in granting summary judgment to Durbins and

dismissing the action of Hasenauers and Corlisses is correct and is affirmed.

AFFIRMED.