2000 SD 6

**KIMBALL INVESTMENT LAND, LTD., Plaintiff and Appellee,**

v.

**Marvin CHMELA and Joann Chmela, Defendants and Appellants.**

**No. 21035.**

Supreme Court of South Dakota.

Argued Dec. 1, 1999.

Decided Jan. 12, 2000.

John F. Cogley of Morgan, Theeler, Cogley & Petersen, Mitchell, South Dakota, Attorneys for plaintiff and appellee.

Wally Eklund of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, South Dakota, Attorneys for defendants and appellants.

GILBERTSON, Justice.

[¶ 1.] Defendants Marvin and Joann Chmela (Chmelas) appeal the circuit court's order granting the motion of Plaintiff Kimball Investment Land, Ltd. (Kimball) for summary judgment on Kimball's claim to foreclose two mortgages executed between the Chmelas and Kimball's predecessors. Chmelas also appeal the circuit court's award of Kimball's attorney's fees. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] The Chmelas reside on farmland in Brule County, South Dakota. Marvin has farmed this land for the past 35 years. In

1974, Chmelas became acquainted with a group of hunters (hunters) from Arkansas. Hunters included Johnny Prislovsky (Prislovsky) and W.C. "Dub" Grizzle (Grizzle). Prislovsky and Grizzle were at all times acting on behalf of hunters. From 1974 to 1986 hunters used Chmelas' land on a "friendship" basis, paying Chmelas no compensation for hunting the land.

[¶ 3.] After the 1986 hunt, Marvin commented to Prislovsky he probably would not see them next year because the bank was going to foreclose on his land. Subsequently, Prislovsky and Grizzle agreed to loan money to Chmelas in return for exclusive hunting rights on the land. On February 3, 1987, Chmelas executed a loan agreement in which Prislovsky and Grizzle agreed to loan Chmelas $68,400. Hunters were given exclusive hunting rights on the land until Chmelas paid the indebtedness on the note, with a provision that if Chmelas prepaid, hunters would have two years of hunting rights after prepayment. This loan was evidenced by a promissory note dated February 3, 1987, which stated Chmelas' debt was to be secured by two mortgages on various tracts of Chmelas' farmland located in Brule County.[1] The mortgages were properly recorded with the Brule County Register of Deeds. The promissory note, with a principal balance of $68,400, called for interest-only payments at five percent per annum for the first two years. Thereafter, the principal amount together with interest at ten percent per annum was to be amortized in annual payments over a period of 25 years. The note further provided each installment of the principal and interest not paid when due would bear interest at ten percent per annum.

[¶ 4.] The relationship between Chmelas and hunters continued, with hunters using the land as provided in the loan agreement. Chmelas however failed to make most of the payments required by the 1987 loan agreement. Chmelas made the five percent interest-only payments due in 1988 and 1989, and paid $4,000 of the $7,535.50 payment due February 1, 1990. They were also given a credit of $3,200 in 1991 for pasture rent and raising pheasants. However, as of February 1, 1998, $68,400 of the principal and $76,047.80 in accrued interest (for a total of $144,447.80) was due on the note. In 1993 at their annual meeting, the hunters discussed the fact Chmelas were making no payments. Hunters asked Chmelas for an option to purchase the land and three additional years of hunting rights in the event Chmelas sold the land or prepaid the total debt. Chmelas accepted this proposal. By April 29, 1994, the new loan agreement (agreement) had been drafted by Cogley and signed by Chmelas, Prislovsky and Grizzle.

[¶ 5.] Each year from 1988 through 1997, Grizzle sent Chmelas a statement reflecting the amount due on the note for that year, and Chmelas never disputed the amount shown on the statement. Chmelas acknowledged receiving at least four or five of the annual statements including one in 1996. In 1995, 1996 and 1997, Chmelas discussed with hunters the fact they did not have the money to pay the annual installment due on the loan.

[¶ 6.] In early 1998, Prislovsky and Grizzle executed a written instrument transferring their interest in the promissory note, mortgages and the agreement to Kimball. Kimball commenced an action in Brule County Circuit Court, seeking to foreclose on the two mortgages securing the promissory note. Chmelas filed an answer and counterclaim, seeking declaratory relief under the agreement. Both parties filed motions for summary judgment. The circuit court granted Kimball's motion for summary judgment. As part of the judgment, the circuit court also awarded $6,093.12 in attorney's fees to Kimball. Chmelas appeal, raising the following issues for our consideration:

1. Did the circuit court err when it granted Kimball summary judgment

---

1. The mortgage and note were drafted by attorney John Cogley. The 1987 loan agreement was apparently drafted by Grizzle or Prislovsky.

on the promissory note and mortgages.

2. Did the circuit court err when it awarded Kimball its attorney's fees.

## STANDARD OF REVIEW

■ [¶ 7.] Our standard of review for a circuit court's grant of a motion for summary judgment is well settled. As we recently stated in Mattson v. Rachetto:

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

1999 SD 51, ¶ 8, 591 N.W.2d 814, 816–17 (quoting *Shuck v. Perkins County*, 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586). Cases involving the interpretation of written documents are particularly appropriate for disposition by summary judgment, such interpretation being a legal issue rather than a factual one. *Dale v. Pelton*, 365 N.W.2d 1, 3 (S.D.1985); *Wilson*, 157 N.W.2d at 21.

## ANALYSIS AND DECISION

[¶ 8.] **1. Did the circuit court err when it granted Kimball summary judgment on the promissory note and mortgages.**

[¶ 9.] Chmelas claim the 1994 agreement extinguished the debt owed to Kimball and satisfied the previous note and mortgages in return for giving hunters three additional years of hunting rights, an option to purchase and right of first refusal to sale of the land. In response, Kimball argues the clear language of the agreement reflects the sole intent of the parties was to amend the 1987 loan agreement to extend the hunting rights of hunters, give them an option to purchase and right of first refusal. Kimball claims the agreement had no effect upon the outstanding indebtedness due by Chmelas or on the mortgages serving as security for the debt. We agree with Kimball.

■ [¶ 10.] The construction of a written contract is a question of law. *Cotton v. Manning*, 1999 SD 128, ¶ 15, 600 N.W.2d 585, 588 (citing *Campion v. Parkview Apartments*, 1999 SD 10, ¶ 25, 588 N.W.2d 897, 902) (quoting *Colonial Ins. Co. of Cal. v. Lundquist*, 539 N.W.2d 871, 873 (S.D. 1995)).

The effects and terms of a contract are questions of law to be resolved by the court.... On appeal, this court can read a contract itself without a presumption in favor of the trial court's determination.... The court is to enforce and give effect to the unambiguous language and terms of the contract....

*Campion*, 1999 SD 10, ¶ 25, 588 N.W.2d at 902 (citing *Production Credit Ass'n v. Wynne*, 474 N.W.2d 735, 740 (S.D.1991) (quoting *Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D.1990) (citations omitted))).

[¶ 11.] The agreement acknowledges the prior documents between these parties consisted of a promissory note, two mortgages and loan agreement. In the next provision the agreement sets forth its purpose to "amend the said Loan Agreement in its entirety ..." No mention is made of any amendments to the existing note or mortgages.

[¶ 12.] Chmelas base their argument that the agreement cancelled the previous debt on the following provision:

7. The parties agree that this Agreement constitutes the sole and only agreement between them respecting the subject matter hereof, that it contains all of the terms and conditions agreed upon by them and supersedes all previous written or oral agreements between them and that it correctly sets forth their obligations to each other as of its date. It is further agreed that any modification of the Agreement shall be ineffective unless the same shall be in writing and signed by the parties hereto.

Kimball counters that this provision limits itself to the "subject matter hereof" which under the terms of the document is limited to the "Loan Agreement" and thus excludes the note and mortgages. Support for Kimball's argument is found from the balance of the text of the agreement.

[¶ 13.] Paragraph three of the agreement states:

Chmelas give and grant to Grizzle and Prislovsky and their successors and assigns, not to exceed twenty (20) individuals, the sole hunting rights on the real property herein described and on any other property which is farmed by the Chmelas *until the indebtedness referred to herein is paid in full;* provided, however, that if Chmelas prepay the said indebtedness, the sole and exclusive hunting rights herein granted shall continue for a period of five (5) years after such payment. (emphasis added).

If the parties had intended the debt due under the promissory note was to be deemed forgiven, paragraph three of the agreement would not have referred to hunting rights continuing until the debt was paid in full or for five years from the date of prepayment. Paragraph three would have simply provided the hunters with five years of hunting rights. Moreover, if Chmelas' argument is accepted, Kimball forgave a debt of over $140,000 in exchange for consideration of a right of first refusal to purchase the land and hunting rights for an additional three years. The language of this paragraph clearly reflects recognition by the parties there remained an outstanding debt, as evidenced by the promissory note and secured by the mortgages.

[¶ 14.] In determining the proper interpretation of a contract, a court is to seek to ascertain and give effect to the intention of the parties. *Hisgen v. Hisgen,* 1996 SD 122, ¶ 4, 554 N.W.2d 494, 496 (citing *Chord v. Pacer Corp.,* 326 N.W.2d 224 (S.D.1982) (other citations omitted)). If there was no debt to be paid in the future, all or most of the language found in paragraph three would be rendered meaningless. "It is a fundamental rule of contract construction that the entire contract and each and all of its provisions must be given meaning if that can consistently and reasonably be done." *Dail v. Vodicka,* 89 S.D. 600, 237 N.W.2d 7, 9 (S.D.1975); *see also Watertown v. Dakota, MN, and Eastn. R. Co.,* 1996 SD 82, ¶ 18, 551 N.W.2d 571, 575 (the contract is to be examined as a whole with all provisions being read together to construe the meaning of the contract). Paragraph three has real meaning only if there is an outstanding debt to be paid in the future.

[¶ 15.] Although paragraph three seems to be the best indicator of the parties' intent to merely amend the 1987 loan agreement, an examination of other relevant paragraphs is consistent with Kimball's argument. In paragraph four, Chmelas agree they will farm the real property and harvest it in a manner so as to provide excellent hunting "for the period as herein set forth." The only time period referred to in the agreement is that set forth in paragraph three – "until the indebtedness referred to herein is paid in full ..." Again, this clause is void of any language indicating Chmelas' debt due on the promissory note was deemed paid as part of this agreement. Likewise, in paragraph five, Chmelas grant hunters an option and right of first refusal in the event Chmelas sell or transfer all or any part of

the farmland.[2] The period of the option and right of first refusal is the time period referred to in paragraph three. The time periods referred to in each of these paragraphs is keyed to the debt being paid in full. Moreover, the introduction to paragraph five states the consideration for the option and right of first refusal includes "the sums previously lent" by Kimball's predecessors and the sum of $10. Chmelas claim this reference to "sums previously lent" as being a part of the consideration, indicates the extinguishment of this debt was a part of the agreement. However, the reference to "the sums previously lent" is simply a recognition the sums previously lent pursuant to the promissory note were a part of the consideration for the option and right of first refusal and does not indicate an intent the debt was to be extinguished. The fact there was additional new consideration of $10 further indicates extinguishment of the debt was not part of the agreement, for if extinguishment occurred, there would have been no need for additional consideration. SDCL 53–6–1. Extinguishment of an existing debt by itself constitutes consideration. *Dawson v. Corbett,* 71 S.D. 106, 21 N.W.2d 758, 760 (1946).

[¶ 16.] Chmelas also argue paragraph seven of the agreement was an integration of any and all-previous agreements between the parties, including the promissory note and mortgages. In support of

their position, Chmelas rely on *Hasenauer v. Durbin,* 216 Neb. 714, 346 N.W.2d 695 (1984). In *Hasenauer,* the court held where a second contract is entered between the same parties in relation to the same subject matter as the first contract and fully covers the earlier subject matter, the second contract supercedes the first contract, and the first is deemed merged into the second. *Id.* at 698. Kimball does not dispute the 1987 loan agreement was superceded by the agreement. In fact, that was the stated purpose of the agreement, i.e., to amend the 1987 loan agreement so as to give hunters extended hunting rights and an option and right of first refusal. As previously noted, one of the introductory clauses of the agreement states: "the parties hereto desire to amend the said *Loan Agreement* in its entirety in accordance with the terms and conditions as herein set forth." (emphasis added). However, the promissory note and the mortgages were separate and apart from the 1987 loan agreement and were thus not integrated into the 1994 agreement.

[¶ 17.] The scant evidence in the record surrounding the execution of the agreement is also supportive of Kimball's position.[3] The note was not returned to Chmelas marked "paid" nor were satisfactions executed to the mortgages. Prislovsky testified during his deposition:

---

2. Paragraph five states:
   (a) Should Chmelas or their heirs or personal representatives elect at any time during the period for which Grizzle and Prislovsky shall have hunting rights as hereinabove set forth to sell or transfer all or any part of the real property herein described, they shall first offer the said real property or that portion thereof being sold to Grizzle and Prislovsky in writing at a price and upon terms to be determined by Chmelas. Grizzle and Prislovsky shall have thirty (30) days within which to notify Chmelas in writing of their desire to purchase the real property or that portion thereof to be sold at the price and upon the terms specified. . . .

3. We have repeatedly held that the nonmoving party to a summary judgment motion may not sit idly by where the moving party has established a prima facie case for granting the motion. It is not a defense to the motion to bring forth general denials void of facts or no denials at all. *Atwood–Kellogg Inc. v. Nickeson Farms,* 1999 SD 148, ¶ 8, 602 N.W.2d 749, 751 (1999) (citing *Zuke v. Presentation Sisters,* 1999 SD 31, ¶ 14, 589 N.W.2d 925, 928) (other citation omitted). Here Chmelas failed to file an affidavit in opposition to the motion of Kimball. Their prior depositions fail to support their claim due to their faulty memory. Rather than refute or deny the factual claims of Kimball, they repeatedly responded they did not remember.

Q: Can you tell us what you recall about how [the agreement] came about?

A: Well, in our annual meeting, I believe in '93, we discussed these payments [Chmela had] been making on his notes, and he wasn't making anything. We had our necks stuck out pretty good for the amount of money involved. So we thought we were entitled to a longer hunting privilege if for some reason he'd sell the place and we couldn't buy it. And so we asked him if we could have a five-year hunting rights with first refusal, and he agreed to that.

If Kimball's predecessors had their "necks stuck out pretty good for the $68,400 involved," it does not follow they would extinguish the debt in exchange for three years hunting privileges, an option and right of first refusal.

[¶ 18.] The cover letter from Cogley to Chmelas sent along with the agreement told them that "[u]nder this new agreement, the exclusive hunting rights *after you repay the loan* are extended from two to five years . . ." [4] (emphasis added).

[¶ 19.] There is also testimony from Joann Chmela indicating Chmelas' knowledge the debt was not extinguished by the agreement. During her deposition testimony, Joann stated:

Q: Do you remember sending a Christmas card to Mr. [Grizzle] sometime after you started work at the motel, after you started work at Oacoma?

A: At Christmas time I always sent them Christmas cards.

Q: You indicated you had gotten that job because perhaps you and your husband could start making payments to the people you owed in Arkansas?

* * * *

A: Not stated that way, I don't remember.

* * * *

Q: If he recalled receiving that, would you argue you wrote something like that to him?

A: Probably not.

Q: Basically, I think the effect was you had gotten the new job over at the motel, with that you guys might be able to make the payments . . .

A: Basically, I took the job to help pay our bills.

Q: So you may have made a statement like that on a card to Mr. [Grizzle]?

A: Probably.

[¶ 20.] Chmelas received annual statements from the hunters on the debt and never once contested the claimed amount. This included a statement sent in 1996 two years after the disputed agreement was signed. Marvin Chmela testified in his 1998 deposition that as far as he knew those statements were accurate. He also admitted in 1996 the hunters offered to buy the Chmela farm for *what I owed them* and they were going to give me $40,000 to live on." (emphasis added).

[¶ 21.] We find the language of the entire agreement, although perhaps not a model of clarity, indicates the intent of Chmelas and Kimball in entering the agreement was solely to amend the 1987 loan agreement. The agreement does not indicate there was an intent to cancel either the promissory note or the mortgages. Thus, the circuit court was correct in concluding Kimball was entitled to summary judgment.

[¶ 22.] We affirm on Issue 1.

[¶ 23.] **2. Did the circuit court err when it awarded Kimball its attorney's fees.**

■ [¶ 24.] Chmelas argue Kimball is not entitled to an award of attorney's fees. SDCL 15–17–39 provides:

Any provision contained in any note, bond, mortgage or other evidence of

4. Chmelas claim in their deposition they to not "remember" getting this cover letter. Yet they signed the agreement and cashed the $10 check also sent in the same envelope.

debt that provides for payment of attorneys' fees in case of default of payment or foreclosure is against public policy and void, *except as authorized by specific statute.* (emphasis added).

*See Vanderwerff Implement, Inc. v. McCance,* 1997 SD 32, ¶ 17, 561 N.W.2d 24, 27 (other citations omitted) ("It is settled law that attorney fees are allowed in actions only when specifically provided by statute or agreement of the parties."). The last sentence of SDCL 15–17–38 provides: "[a]ttorneys' fees may be taxed as disbursements on mortgage foreclosures either by action or by advertisement." This is specific statutory authorization for an award of attorneys' fees in mortgage foreclosures and provides the authorization for the circuit court's award of attorney's fees to Kimball.

[¶ 25.] Chmela's reliance on *Vanderwerff* is misplaced. That case dealt with a claim for breach of a sales contract for a farm implement. Unlike mortgage foreclosures, which are specifically included in SDCL 15–17–38, claims for breach of contract such as occurred in *Vanderwerff,* are not and thus are barred under SDCL 15–17–39.

[¶ 26.] We affirm on Issue 2.

[¶ 27.] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.