# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1031

_____

| | | |
|---|---|---|
| CDI Energy Services, Inc., | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of North Dakota. |
| West River Pumps, Inc.; | * | |
| John Martinson; Dale Roller; | * | |
| Kent Heinle, | * | |
| | * | |
| Defendants - Appellees. | * | |

_____

Submitted: November 13, 2008
Filed: May 29, 2009

_____

Before MELLOY, BOWMAN, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

CDI Energy Services, Inc. ("CDI"), sells and services equipment for use in the oilfield industry. CDI maintained a field office in Dickinson, North Dakota, with three employees, John Martinson, Dale Roller, and Kent Heinle. CDI alleges that these men started a competing company, West River Pumps, Inc. ("West River"), stole proprietary information, and solicited business from CDI's clients while still employed by CDI. Upon discovering its employees' actions, CDI filed the present diversity action asserting, among other claims, state-law claims of breach of loyalty,

trade-secret misappropriation, and business interference. CDI obtained an initial, ex parte temporary restraining order and moved for preliminary injunctive relief. After the parties briefed the matter and submitted affidavits, the district court[1] denied the motion for a preliminary injunction and dissolved the temporary restraining order. CDI appeals, and we affirm.

I.     Background

In February 2000, CDI entered the market for selling and servicing oilfield equipment in Dickinson, North Dakota, by hiring Martinson and Roller to open a CDI field office. At that time, Martinson and Roller were experienced in the industry, had client contacts in the area, and were working for one of CDI's competitors. While the men still were working for their previous employer, CDI encouraged them to solicit business from the competitor's clients and bring those clients with them to CDI. Roller and Martinson did so. One of the clients Roller brought with him to CDI subsequently accounted for approximately half of CDI's business.

At CDI, Martinson served as the district manager in North Dakota, and Roller served as the sales and service representative. Martinson hired defendant Kent Heinle in 2007 to work for CDI as a service technician.

In 2007, while employed by CDI, the three men formed West River and contacted CDI's clients. They informed CDI's clients of their plan to commence operations as a separate business and asked those clients to do business with West River. They also secured permission from several clients to move the clients' equipment from CDI's shop to West River's new location. On October 16, 2007, the three men resigned from CDI.

---

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

Martinson, Roller and Heinle were CDI's only employees in the area, and when they left CDI, CDI no longer had a presence in the local market. CDI's nearest field office was over 140 miles away in eastern Montana.

CDI argues that it made substantial investments to train Martinson, Roller, and Heinle, develop business in the Dickinson area, and develop trade-secret information. CDI argues that these investments and efforts support its breach of loyalty and trade-secret claims because the investments demonstrate the value that the defendants took from CDI. For example, CDI asserts that it provided extensive training to the men regarding marketing strategies and several aspects of CDI's business operations. The defendants argue that CDI provided no education or formal training but that CDI hired them specifically because they already had experience in the industry and, in fact, had customers they could bring to CDI.

CDI argues that it took efforts reasonable under the circumstances to protect certain information as trade secrets. CDI identifies customer lists, customer contact information, business strategies, customer repair and purchase histories, and CDI pricing information as trade secrets. CDI argues that it had policies in place informing employees that information was confidential and that employees were to maintain the information as confidential. The defendants assert that CDI's Dickinson office was open, the purportedly trade-secret materials were unguarded and unmarked, and CDI made no substantial efforts to ensure that the materials were kept confidential.

The defendants admit that Martinson, Roller, and Heinle took limited records with them when they left CDI. They provided the district court with a description of all the documents that they took, however, and claim that they returned those documents to CDI. They assert none of the materials are trade secrets.

In assessing the propriety of preliminary injunctive relief, the district court applied the factors from Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109,

114 (8th Cir. 1981) (en banc). The court found CDI had not made a showing sufficient to demonstrate that any of the materials the defendants took constituted trade secrets under North Dakota law. Accordingly, the court found CDI had not established a likelihood of success on the merits of the trade-secret claim. Regarding the men's solicitation of CDI's customers while still employed by CDI, the court found CDI was likely to succeed on the merits of a statutory claim for breach of loyalty.[2] See N.D. Cent. Code. § 34-02-14. Proceeding with the Dataphase analysis, the court examined the threat of irreparable harm and the balance of the harms of granting or not granting injunctive relief. Finally, the court examined the public's interest and held that injunctive relief was not warranted.

II.      Discussion

"A district court has broad discretion when ruling on preliminary injunction requests, and we will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of discretion." Coca-Cola Co. v. Purdy, 382 F.3d 774, 782 (8th Cir. 2004). In Dataphase, we held that the relevant factors to consider when assessing the propriety of preliminary injunctive relief include: (1) the likelihood of success on the merits; (2) the presence or risk of irreparable harm; (3) the balancing of the harms of granting or denying an injunction; and (4) the public's interest. Dataphase, 640 F.2d at 114. "The party seeking injunctive relief bears the burden of proving these factors." Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006). We review the district court's application of these factors in turn.

        a.      Likelihood of Success on the Merits

We find no error in the district court's conclusion that CDI failed to meet its burden to prove that the defendants had taken trade-secret information or that CDI

_____

        [2] The court did not expressly address the likelihood of success on the merits as to several other business-tort claims, and we interpret the district court's treatment of those claims as similar to the breach-of-loyalty claim.

itself had taken reasonable steps to protect any purported trade secrets. The information at issue was of the type that may, in some industries, be treated as trade-secret information (customer names, contact information, pricing information, etc.). CDI, however, failed to show that any of the information in this case actually was a trade secret, i.e., information that has economic value by virtue of having been kept secret and that cannot be "ascertain[ed] by proper means." See N.D. Cent. Code § 47-25.1-01(4) ("'Trade secret' means information . . . that: a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.").

It appears undisputed that the potential customers for CDI and West River in the area surrounding Dickinson are a small collection of easily identifiable, locally operating oilfield companies. Information about these companies would be easily obtainable, if not already known, by relevant actors in the local oilfield service and equipment industry. Also, the record shows little effort by CDI to conceal data as trade secrets, and the defendants' affidavits contest CDI's assertions regarding those efforts. Because we review the district court's assessment of the factual record only for clear error, Coca-Cola, 382 F.3d at 782, we find no basis to disturb the district court's conclusion regarding the trade-secret claim.

With no likelihood of success on the merits, there is little justification for granting a preliminary injunction regarding the trade-secret claim. See Oglala Sioux Tribe v. C & W Enters., Inc., 542 F.3d 224, 233 (8th Cir. 2008) (ceasing a Dataphase analysis after finding no likelihood of success on the merits). Regardless, because the district court determined CDI was likely to succeed on the merits of its other claims, we address the remaining factors below.

Regarding a likelihood of success on the statutory breach-of-loyalty claim under North Dakota Century Code § 34-02-14, the defendants do not seriously contest the district court's finding that CDI is likely to prevail. North Dakota law is clear in setting forth a duty of loyalty that precludes employees from soliciting their employer's customers while still working for the employer. Id. CDI argues that this finding alone mandates a grant of equitable relief in the form of a preliminary injunction. In so arguing, CDI misconstrues Eighth Circuit law. While the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied, a finding of a likelihood of success on the merits only justifies preliminary relief if there is a risk of irreparable harm and the balance of the factors support an injunction. See, e.g., Gelco Corp. v. Coniston Partners, 811 F.2d 414, 420 (8th Cir. 1987) ("The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction, for the basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.") (internal quotation and alteration omitted). Accordingly, it is necessary to balance the likelihood of success on the non-trade-secret claims against the remaining factors.

b.    Irreparable Harm

The district court determined that any harm in the present case can be addressed through an award of damages because the harm to CDI, to a large extent, has already occurred. The non-trade-secret claims rest on the possibly wrongful appropriation of CDI's clients, an act the defendants have already carried out. As such, it is not entirely clear how injunctive relief would actually assist CDI in any manner. This clearly was the district court's view of the case, and the court noted further that it did not want to order (and lacked the authority to order) the customers to cease doing business with defendants and return to CDI.

Also, the record strongly suggests that, without the individual defendants as employees, CDI had no local personnel in place to service the customers. CDI

repeatedly stressed in its brief to our court that Martinson, Roller, and Heinle were CDI's only employees in North Dakota. CDI stated, "West River has taken virtually all of CDI sales and service business in Dickinson and the surrounding North Dakota area." The defendants assert that CDI is simply forwarding its calls to a service office in Sidney, Montana, 150 miles away, and CDI does not contest this assertion.

Given this state of affairs, it was appropriate for the district court to view the irreparable-harm factor as weighing against the issuance of a preliminary injunction. The harm that had already occurred could be remedied through damages. <u>Adam-Mellang v. Apartment Search, Inc.</u>, 96 F.3d 297, 300 (8th Cir. 1996) (finding preliminary injunctive relief unavailable where a plaintiff had "an adequate remedy at law, namely, the damages and other relief to which she will be entitled if she prevails"). Also, CDI failed to show that an injunction would actually serve to lessen any possible ongoing damages by causing customers to return to CDI.

c. Balance of Harms

The district court viewed any potential harm to the defendants in granting preliminary relief as substantial and any additional harm to CDI in denying the order as minor. The defendants are a small local business and its three owners. The record shows the individual defendants are substantially invested in West River. The customers that West River took from CDI comprise the majority of the defendants' business, and it appears undisputed that an injunction would put the defendants out of business. Because CDI asserts that it has already lost almost its entire business in North Dakota, it is difficult to appreciate what additional harm to CDI an injunction might prevent. Moreover, because former CDI customers might turn to a third party for service, the issuance of an injunction, if anything, would seem likely to harm both parties. As the district court stated, "It would be detrimental to the customers/clients, and not particularly helpful to CDI, if the Court were to enjoin West River . . . from servicing those customers without forcing them to return to CDI."

    d.    Public Interest

Finally, public interest does not factor strongly into the final balance in this case because North Dakota has enacted legislation that favors both parties. The need to preserve the public's access to services, however, pushes this factor slightly in favor of denying a preliminary injunction. This was the view of the district court, and we agree.

North Dakota generally prohibits contractual restrictions on an employee's ability to practice his "profession, trade, or business." N.D. Cent. Code § 9-08-06; see also Warner and Co. v. Solberg, 634 N.W.2d 65, 70 (N.D. 2001). Describing this prohibition, the North Dakota Supreme Court has stated, "It is the right of the public's access to the services offered by the employee that is more significant than the employee's interests." Warner, 634 N.W.2d at 70. As relevant to this Dataphase factor, then, North Dakota deems the public's access to services to be a more pressing policy concern than the details of the relationship between a particular employee and employer.

North Dakota also considers employee loyalty to be in the public interest and prohibits employees from soliciting their employers' customers while still working for the employer. See N.D. Cent. Code § 34-02-14. This second public policy, however, is rather limited in that North Dakota cabins the restriction on solicitation to the duration of the employment relationship. Warner, 634 N.W.2d at 73 ("Our decisions . . . prohibit restraints on solicitation after the employment ceases."). Given the limited nature of the restriction on solicitation, the policy precluding contractual restrictions on practicing a trade, and the clear public interest in preserving access to services, the district court acted well within its discretion when it held the public policy factor was a "close call" that weighed "more against the issuance of a preliminary injunction."

Finding no error in the district court's assessment of the record or abuse of its considerable discretion in the application of the <u>Dataphase</u> factors, we affirm the judgment of the district court.

_____