# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3149

_____

Stacy Ryan

*Plaintiff - Appellant*

v.

Constance "Connie" Ryan; Streck, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: December 13, 2017
Filed: May 7, 2018

_____

Before WOLLMAN, LOKEN, and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Streck, Inc. ("Streck") is a successful, closely held Nebraska corporation founded by Dr. Wayne Ryan in 1982. In 1985, Dr. Ryan and his wife Eileen gifted equal amounts of voting and nonvoting Streck stock to their five children. Daughter Constance Ryan ("Connie") has been president of Streck since 1993 and CEO and chairman of the board since 2013. In mid-2012, exercising its right to purchase under a revised Redemption Agreement ("RRA"), Streck purchased daughter Stacy Ryan's

voting and nonvoting shares for $9,280,235. In August 2015, Stacy filed this action against Streck and Connie, alleging violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5; and multiple violations of Nebraska law in connection with Streck's redemption of Stacy's stock.[1] The district court[2] granted Defendants' motions to dismiss and denied post-dismissal motions to alter or amend the judgment and for leave to file an amended complaint. Stacy appeals those rulings. We affirm the order dismissing the Complaint but remand for further consideration of whether Stacy's post-dismissal motion to alter or amend presented newly discovered evidence warranting alteration of the order dismissing her breach of contract claim.

## I. Background

The following facts are alleged in Stacy's 124-paragraph Complaint and are taken as true for the purposes of ruling on Defendants' motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Taking into account subsequent stock splits, the Ryans gifted each of their children 5,500 voting shares and 2,789,470 nonvoting shares of Streck stock. All five children executed stock redemption agreements in 1989 and 2003 providing that each would receive book value if he or she redeemed shares with Streck. In mid-2007, without Stacy's knowledge, Streck and Connie revoked Connie's stock redemption agreement, and Connie purchased 154,000 Streck voting shares, without Board approval, in exchange for her promissory note.

---

[1]For clarity and convenience, we will refer to the Ryan siblings who are parties to this action as Stacy and Connie. We will refer to Streck and Connie collectively as Defendants.

[2]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

In December 2007, Connie sent Stacy the proposed RRA, which significantly revised the prior agreement. Paragraph 7 of the RRA provided that Streck "shall have the right to repurchase the stock, in whole or in part, owned by Stockholder at any time." Paragraph 9 provided that the stock "shall be purchased at the fair market value of the stock (subject to any applicable discounts or adjustments) as set forth in the most recent valuation prepared by Juris Valuation Advisors [JVA] . . . immediately preceding the date of the written notification of the option exercised by Stockholder or the Corporation." Connie advised that fair market value would be determined by JVA on an annual basis. Though initially hesitant, Stacy signed the RRA after being told it was intended for use if Streck was sold to a third party and negotiating a "tag-along/drag-along" provision giving her the right to receive the same price as controlling shareholders if at least 51% of Streck's stock was sold. Unbeknownst to Stacy, while her other siblings signed RRAs, Connie did not.

In March 2012, Dr. Ryan notified the Ryan siblings he planned to buy all outstanding Streck stock and remain CEO with new management, and that the most recent stock valuation was $3.32 per nonvoting share and $3.49 per voting share, giving them each a total valuation of almost $9.3 million. In April, he emailed the siblings asking if they wanted to retain ownership of their shares. Stacy replied that she was concerned about Connie's involvement in Streck and wanted more information before deciding whether to sell her shares. She received no response.

On June 19, Dr. Ryan wrote Stacy that Streck had decided to redeem her shares for $9,280,235 and she was required to sign the enclosed Stock Purchase Agreement (SPA) to complete the transaction. Stacy refused to sign the SPA. Streck wired payment for her shares to her bank account. When Stacy returned the payment, Dr. Ryan wrote that Stacy was no longer a Streck shareholder, the money was available to her, and Streck would follow the Nebraska guidelines for unclaimed property if she did not claim it. Streck's counsel denied Stacy's request for corporate records because she was not a shareholder. The notes of a June 11 meeting between Connie,

Dr. Ryan, and his estate-planning lawyer reflect that redemption of the shares of siblings other than Connie would be completed by the end of Streck's fiscal year, after which Streck would distribute $10 million to each of the remaining shareholders -- Dr. Ryan, Eileen, and Connie. On July 13, Dr. Ryan sent a memo to the siblings other than Stacy and Connie offering to purchase their stock for $3.49 per voting share and $3.32 per nonvoting share if they agreed to sell before July 27, 2012.

Streck's attorneys continued to urge Stacy to sign the SPA, advising that her siblings -- including Connie -- had signed SPAs and would be receiving the same price as Stacy for their voting and nonvoting shares. On August 22, Stacy signed the SPA, crossing out a mutual release of claims provision, a change that Streck accepted. The SPA provided that Stacy's $9,280,235 payment was "determined according to paragraph 9 of the [RRA]." Unbeknownst to Stacy, Connie did not execute an SPA and retained her shares. When Eileen died in 2013, Connie inherited 159,500 voting shares pursuant to a 2007 change to Eileen's trust, giving Connie two-thirds voting control of Streck. Stacy alleged that a professional appraisal completed in 2014 determined that the fair market value of outstanding Streck stock on March 7, 2013, with applicable discounts, was $8.33 per voting share and $8.09 per nonvoting share.

After voluntarily dismissing an amended complaint filed in state court, Stacy filed this action in federal court, alleging that a series of wrongful acts by Connie and Streck caused her to execute the SPA and complete the redemption of her shares in Streck "for substantially less than fair market value under the terms of the [RRA]." In addition to claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5, she alleged violations of the Securities Act of Nebraska,[3] breach of fiduciary duty, shareholder oppression, conversion, tortious interference with business expectancy, unjust enrichment, fraudulent misrepresentation and inducement, and breach of contract. For relief, Stacy sought to invalidate Connie's 2007 purchase of 154,000

---

[3]Neb. Rev. Stat. § 8-1102(1) (2007), amended by 2017 Neb. Laws L.B. 148 § 3.

-4-

voting shares, rescind the SPA, set aside the redemption of Stacy's shares, and "damages to which Plaintiff is entitled."

In the February 2016 order granting Defendants' motions to dismiss, the district court took judicial notice of an October 2011 JVA valuation determining that Streck stock was worth $3.49 per voting share and $3.32 per nonvoting share, the prices at which Streck redeemed Stacy's shares. The district court dismissed Stacy's claims under federal and Nebraska securities laws, and her claims of fraud, breach of fiduciary duty and shareholder oppression, because Stacy did not plausibly allege that wrongful acts caused her loss -- she had "consented to Streck's repurchase of the stock at Streck's sole election" in the RRA and did not plead "sufficient facts to raise an inference that Defendants somehow manipulated the 2011 Valuation itself." The court dismissed conversion, tortious interference, and unjust enrichment claims because "the facts as pled in the Complaint reveal that Streck redeemed Stacy Ryan's shares in a method consistent with [her] rights under the [RRA]." The court dismissed the breach of contract claims because higher share valuations in the 2014 appraisal were not evidence contradicting the SPA provision that the purchase price paid for Stacy's shares was "determined according to paragraph 9 of the [RRA]."

Following entry of judgment of dismissal, Stacy filed a timely motion to alter or amend the judgment and for leave to file an amended complaint. See Fed. R. Civ. P. 15(a)(2), 59(e). The district court denied that motion and a subsequent Rule 59(e) motion. We will discuss these rulings in Part III of this opinion.

## II. The Order Dismissing the Complaint

On appeal, Stacy contends that the district court erred by (1) taking judicial notice of the 2011 JVA Valuation without converting the motions to dismiss into

motions for summary judgment; and (2) dismissing her claims for failing to plausibly allege actionable fraud and self-dealing.[4]

**A. Judicial Notice of the 2011 JVA Valuation.**  Stacy argues the district court erred in taking judicial notice of excerpts from the 2011 JVA Valuation showing values of $3.49 per voting share and $3.32 per nonvoting share because these were "matters outside the pleadings" that may not be considered without converting Defendants' motions to dismiss into motions for summary judgment.  See Fed. R. Civ. P. 12(d).  However, documents "necessarily embraced by the complaint" may be considered in ruling on a Rule 12(b)(6) motion to dismiss.  Enervations, Inc. v. Minn. Mining & Mfg. Co., 380 F.3d 1066, 1069 (8th Cir. 2004).  This includes "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  Ashanti v. City of Golden Valley, 666 F.3d 1148, 1151 (8th Cir. 2012) (quotation omitted); see Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012).

The district court concluded that the 2011 JVA Valuation may be considered because Stacy's Complaint "allege[d] that it was through this document that Streck determined her stock's purchase price."  The Complaint alleged that stock would be redeemed under the RRA at fair market value "determined on an annual basis by Juris Valuation Advisors, LLC," and that Dr. Ryan told the Ryan siblings in March 2012

---

[4]Stacy also argues the district court erred in denying a request made at the end of her memorandum in opposition to Defendants' motions to dismiss:  "If the Court finds the Complaint's allegations insufficient with regard to any element, Stacy Ryan requests leave to amend."  This contention is without merit.  See Dudek v. Prudential Sec., Inc., 295 F.3d 875, 880 (8th Cir. 2002).  As in Dudek, Stacy's request did not include a proposed amended complaint, as District of Nebraska Local Rule 15.1(a) requires.  Moreover, Stacy had previously amended the complaint she filed in state court before voluntarily dismissing that action and filing this action.  There was no abuse of discretion in denying her a "fourth bite at the apple."  See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1066 (8th Cir. 2005).

that "at its last valuation Streck's non-voting stock was worth $3.32 per share and its voting stock was worth $3.49 per share." Thus, the court judicially noticed share value facts consistent with the Complaint. The Complaint alleged that the 2011 Valuation was "manipulated," not that Stacy was not paid the amount set forth in the 2011 Valuation. She argues that she had no opportunity to review the entire 2011 JVA report "to determine authenticity or validity." But the Complaint did not make authenticity a disputed fact. Whether a party "had access to and reviewed the proffered documents is a matter unrelated to their authenticity -- i.e., whether the documents are what its proponent claims." Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1160-61 (9th Cir. 2012) (quotation omitted). The district court did not err in considering the October 2011 JVA per-share valuations in ruling on the motions to dismiss.

**B. Dismissal of Stacy's Claims.** On appeal, we review a Rule 12(b)(6) dismissal for failure to state a claim *de novo*, "taking all facts alleged in the complaint as true, and making reasonable inferences in favor of the nonmoving party." Smithrud v. City of St. Paul, 746 F.3d 391, 397 (8th Cir.), cert. denied, 135 S. Ct. 361 (2014). To avoid dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**A.** Stacy first argues that her Complaint adequately alleged Defendants' self-dealing and manipulation of the stock valuation process, that determination of fair market value is a question of fact under Nebraska law, and that "Connie owed a fiduciary duty to Stacy." But with one exception, these assertions, even if accurate, are irrelevant because they ignore the basis for the district court's decision -- that Stacy did not plausibly plead that wrongful acts caused her loss.

-7-

The exception is Stacy's assertion that the Complaint alleged sufficient facts to raise an inference that Defendants manipulated the 2011 JVA Valuation. As the district court recognized, that assertion, if plausibly pleaded, might support claims requiring proof that wrongful acts caused Stacy's alleged loss. However, the district court concluded, "[a]lthough she alleges a host of transgressions in her Complaint, immaterial to her claims, she has not pled sufficient facts to raise an inference that Defendants somehow manipulated the 2011 Valuation itself." On appeal, Stacy argues the allegation that a 2014 appraisal valuing Streck shares as of March 2013 at substantially more than what Stacy was paid plausibly pleaded that Defendants manipulated the 2011 Valuation. However, that Streck shares had a greater value in March 2013 is not evidence that Defendants "manipulated" the valuation determined by JVA in October 2011. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2). Stacy's Complaint did not plead facts plausibly showing that Defendants manipulated the 2011 JVA Valuation in a manner that caused her alleged loss.

**B.** Finally reaching the merits of the critical issue, Stacy argues the district court erred in concluding that she did not sufficiently plead that Defendants' alleged misconduct caused her to execute the SPA and sell her shares when she otherwise would not have done so. It is undisputed that, in a private action under SEC Rule 10(b)-5 or under the substantially identical provision in the Securities Act of Nebraska, the plaintiff must prove "loss causation." See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157 (2008).[5] Plaintiff must prove a "nexus

---

[5]Under Nebraska law, fraudulent misrepresentation and breach of fiduciary duty claims have a comparable causation requirement. See Agri Affiliates, Inc. v. Bones, 660 N.W.2d 168, 175 (Neb. 2003) (fraudulent misrepresentation); McFadden Ranch, Inc. v. McFadden, 807 N.W.2d 785, 789-90 (Neb. App. 2011) (breach of fiduciary duty).

between the defendant's fraudulent conduct and the plaintiff's pecuniary loss." Harris v. Union Elec. Co., 787 F.2d 355, 366 (8th Cir.), cert. denied, 479 U.S. 823 (1986). Thus, to defeat a motion to dismiss, the plaintiff must plead facts that plausibly allege that defendant's misconduct caused the plaintiff's loss.

The district court concluded that Stacy did not plausibly plead loss causation because the Complaint alleged that the RRA gave Streck the right to purchase her stock at its election, and therefore, "the Defendants' alleged misconduct could not have caused Stacy Ryan to sell her stock." The court noted that our decision in St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 562 F.2d 1040, 1043-44 (8th Cir. 1977), cert. denied, 435 U.S. 925 (1978), "compels this conclusion." In St. Louis Union, plaintiffs alleged that the defendant redeemed shares without disclosing that it planned to make a public offering. Because the shares were purchased pursuant to a stock restriction giving the firm the absolute right to purchase, what the selling shareholders knew or did not know about a future public offering "was wholly irrelevant to their decision to sell the stock." Id. at 1049.

Stacy argues that her case is more like Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 538 F.2d 532, 533-34 (3d Cir.), cert. denied, 429 U.S. 1010 (1976), than St. Louis Union. In Ayres, a retired former employee and stockholder alleged that the defendant violated federal and state securities laws when it exercised an option to redeem his shares on retirement without informing him that it planned to make a public offering. In concluding that the employee's fraud claim was not arbitrable, a divided panel of the Third Circuit concluded that the defendant's nondisclosures were not immaterial because they may have affected the plaintiff's voluntary decision to retire and sell his stock. Id. at 537. We conclude that Ayres, even if correct, is distinguishable. Like the plaintiffs in St. Louis Union, Stacy was obligated to redeem her shares when Streck exercised its right to repurchase under Paragraph 7 of the RRA. As we said in distinguishing Ayres in St. Louis Union, "[Stacy was] powerless to prevent the contingency which gave [Streck] its absolute

right to purchase." 562 F.2d at 1054. Thus, the district court correctly concluded that Defendants' alleged misconduct could not have caused Stacy to sell her stock.

Stacy argues that the RRA's terms were superseded by the subsequent negotiation and execution of the SPA. But the SPA expressly stated that Streck "has exercised its rights to purchase the Relevant Shares from Shareholder pursuant to paragraph 7 of [the] Redemption Agreement," and that Stacy would be paid $9,280,235 for her shares, "determined according to paragraph 9 of the Redemption Agreement." We will have more to say about the interplay between the two agreements in Part III of this opinion. But the SPA did not supersede the RRA nor cast doubt on the district court's causation analysis. See Hagerbaumer v. Hagerbaumer Bros., Inc., 305 N.W.2d 4, 6-7 (Neb. 1981).

For these reasons, we conclude the district court correctly dismissed the claims requiring proof of loss causation that was not plausibly pleaded -- the federal and state securities law claims and state law claims of fraudulent misrepresentation and inducement, breach of fiduciary duty, and shareholder oppression. On appeal, Stacy has not meaningfully argued that the remaining claims -- conversion, tortious interference, unjust enrichment, and breach of contract -- were improperly dismissed. Accordingly, challenges to the dismissal of those claims are waived. See, e.g., Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007).

## III. Denial of Post-Dismissal Motions

After entry of judgment of dismissal, Stacy timely filed a Motion to Alter or Amend the Judgment or in the Alternative to File an Amended Complaint and accompanied the motion with a proposed First Amended Complaint. Stacy argued the motion should be granted (i) because the judgment was "clearly wrong," and (ii) because of new evidence discovered after briefing on the motions to dismiss.

-10-

Motions under Rule 59(e) "serve the limited function of correcting manifest errors of law or fact or to present newly discovered evidence" and "cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (quotations omitted). District courts have "broad discretion in determining whether to alter or amend judgment" under Rule 59(e); we "will not reverse absent a clear abuse of discretion." Briehl v. Gen. Motors Corp., 172 F.3d 623, 629 (8th Cir. 1999) (quotation omitted). When a complaint is dismissed for failure to state a claim, the district court has "considerable discretion to deny a post-judgment motion for leave to amend because such motions are disfavored, but may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits." United States ex rel. Roop v. Hypoguard USA, Inc., 559 F.3d 818, 824 (2009). "[F]utility constitutes a valid reason for denial of a motion to amend." United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp., 690 F.3d 951, 958 (8th Cir. 2012) (quotation omitted).

In the Motion to Alter or Amend, Stacy argued that the district court erred in dismissing her claims because she pleaded facts supporting a claim that Defendants manipulated the appraisal process by providing inaccurate and incomplete data to JVA, "thereby allowing Defendants to repurchase Plaintiff's shares at significantly less than fair market value." The district court was unpersuaded by this major recasting of the Complaint:

> The Court did not infer a fraudulent scheme, because none was mentioned in the Complaint. . . . The Complaint acknowledged that under the terms of the [RRA], Streck could repurchase Stacy Ryan's shares at Streck's sole election for fair market value *as determined by the most recent juris valuation. . . .* [I]t did not allege that the price paid was less than the most recent Juris Valuation. . . . Accordingly, the Complaint did not allege that any wrongdoing by Defendants caused

-11-

Stacy Ryan to suffer a loss, or that any conduct of the Defendants breached the [RRA].

We agree. The court did not abuse its discretion in denying the Motion to Alter or Amend on this ground.

Stacy's motion to alter or amend also relied on newly discovered evidence, as did a second motion to alter or amend that the district court denied for lack of jurisdiction because it was filed after Stacy's appeal was pending. To succeed on a Rule 59(e) motion based on newly discovered evidence, the movant must show:

> (1) that the evidence was discovered after the court's order, (2) that the movant exercised diligence to obtain the evidence before entry of the order, (3) that the evidence is not merely cumulative or impeaching, (4) that the evidence is material, and (5) that the evidence would probably have produced a different result.

Miller v. Baker Implement Co., 439 F.3d 407, 414 (8th Cir. 2006).

The district court reviewed the new evidence and denied the motion to alter or amend because it would not have "'produced a different result' than that reached in the Court's Order and Judgment." Metro. St. Louis Sewer Dist., 440 F.3d at 933. For the most part, we agree because, while the evidence may tend to show that the *actual* fair market value of Stacy's stock is a disputed fact, that was not the gravamen of the claims asserted in her Complaint. But one piece of allegedly newly discovered evidence *may* tend to show one or more material issues of disputed fact as to the breach of contract claim, which persuades us that a limited remand is required.

Submitted with the motion to alter or amend was an excerpt from a JVA Valuation Report dated July 27, 2012 appearing to state that the discounted fair market value of outstanding Streck stock was $4.42 per voting share and $4.21 per

nonvoting share. Stacy averred that she received this document from Dr. Ryan "after December 23, 2015," when Defendants' motions to dismiss were briefed and submitted. In concluding this document would not have changed the court's decision to dismiss, the district court explained:

> The 2012 Valuation valued Streck stock as of July 27, 2012, more than a month after the redemption. The new evidence does not contradict that at the time of the redemption, the 2011 Valuation was still the most recent valuation of Streck stock.

We conclude that this analysis fails to view material fact questions in the light most favorable to the non-moving party, as Rule 12(b)(6) requires.

It is Defendants' position that Stacy's stock was redeemed, for purposes of Paragraphs 7 and 9 of the RRA, when Dr. Ryan sent Stacy the June 19, 2012 letter notifying her that Streck had decided to redeem her shares, and then declared that she was no longer a stockholder when Stacy returned the payment and declined to sign the SPA. However, the actions of Dr. Ryan and Streck's attorneys after June 19, as alleged, were ambiguous. Just because Streck had a right to repurchase Stacy's shares at any time does not establish when Streck exercised that right. Here, the parties ultimately entered into a materially altered SPA on August 22 reciting that Stacy owned the shares being sold that day at prices "determined according to Paragraph 9 of the [RRA]." In dismissing the Complaint, the district court did not need to determine "the date of the written notification of the option exercised by [Streck]," the date prescribed in Paragraph 9, because the 2011 Valuation was the undisputed "most recent valuation . . . immediately preceding" both June 19 and August 22, 2012. But *if* the 2012 Valuation meets the requirements for newly discovered evidence, extrinsic evidence might then establish that the effective date for the Paragraph 9 determination under the RRA and the SPA, read together, was later than July 27, 2012. In that event, the claim in Count IX of Stacy's Complaint

-13-

that "Streck's failure to redeem Stacy's shares at fair market value pursuant to the terms of the [SPA] and [RRA] constitutes a material breach of said agreements" becomes very plausible. Thus, futility is not a basis to ignore this newly discovered evidence. And there is no need to amend the Complaint in this regard because, with comparable foundation, the district court may take judicial notice of the per share values in the 2012 Valuation, as it did with the 2011 Valuation.

Defendants argue that the 2012 Valuation cannot qualify as newly discovered evidence because Stacy avers that she received the evidence from Dr. Ryan in December 2015, before the district court granted the motions to dismiss in February 2016. However, cases such as Miller stating that new evidence must be discovered after the court's order dealt with summary judgment motions. Here, the record reflects that a document in Defendants' custody and control that contradicts the factual basis for their motions to dismiss the breach of contract claim was first discovered after briefing and submission of those motions. Given "the Rule 15(a)(2) considerations that favor affording parties an opportunity to test their claims on the merits," Roop, 559 F.3d at 824, we are not prepared to rule categorically that this evidence may not qualify as newly discovered for purposes of reconsidering Rule 12(b)(6) dismissal of the breach of contract claim. Further inquiry is required.

For these reasons, the Memorandum and Order of the district court dated June 14, 2016, is reversed in part and the case is remanded with directions to vacate that portion of the judgment dismissing Count IX of the Complaint and to conduct such further proceedings not inconsistent with this opinion as the district court may deem appropriate. In all other respects, the judgment and orders of the district court are affirmed.

_____

-14-