# United States Court of Appeals
## For the Eighth Circuit
_____

No. 25-3146
_____

Euphoric, LLC, a Missouri limited liability corporation

*Plaintiff - Appellant*

UNIKC, LLC, a Missouri limited liability corporation; Mr. Steven Davis; The Sourze, LLC

*Plaintiffs*

v.

Westport Community Improvement District, a nonprofit Missouri corporation; Pamela Ptacek, in her official capacity as a member of the Westport Community Improvement District; Zach Marten, in his official capacity as a member of the Westport Community Improvement District; Max Wassertstrom, in his official capacity as a member of the Westport Community Improvement District; Paul Mesler, in his official capacity as a member of the Westport Community Improvement District; Kyle Kelly, in his official capacity as a member of the Westport Community Improvement District; Larry Goldman, in his official capacity as a member of the Westport Community Improvement District; Brett Allred, as an individual and in his official capacity as a member of the Westport Community Improvement District; Matthew Vos, as an individual and in his official capacity as a member of the Westport Community Improvement District; Jeremy Hurt, as an individual and in his official capacity as a member of the Westport Community Improvement District; Christie Montague, in her official capacity as a member of the Westport Community Improvement District; Brandi Degenhardt, in her official capacity as a member of the Westport Community Improvement District; Franklin D. Kimbrough, as an individual and in his official capacity as a member of the Westport Community Improvement District

*Defendants*

4128 Broadway, LLC, a Missouri limited liability corporation; Harold Brody, in his official capacity as a member of the Westport Community Improvement District

*Defendants - Appellees*

Murfin Inc.; Allred Holdings, LLC; DB Icehouse, LLC; Gregory Bartold; Joe Niebur

*Defendant*s

------------------------------

National Association for the Advancement of Colored People; National Urban League

*Amici on Behalf of Appellant(s)*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: May 13, 2026
Filed: June 24, 2026
_____

Before COLLOTON, Chief Judge, SHEPHERD and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.


Christopher Lee attempted to lease a commercial property in Kansas City, Missouri, through his company, Appellant Euphoric, LLC (Euphoric), from Appellee Harold Brody's company, Appellee 4128 Broadway LLC (Broadway). Though both Euphoric and Broadway executed a purported lease document, that document was missing an important term: a blank space remained where the agreement's "Commencement Date" was to go. The parties' relationship soured and

Broadway never gave Euphoric the keys to the property. Euphoric sued Brody and Broadway, alleging, among other claims, breach of the putative lease agreement. Months later, after a new tenant moved into the property, Euphoric moved for a preliminary injunction and temporary restraining order compelling Broadway to give Euphoric possession of the premises. The district court[1] denied that motion, and then a motion for reconsideration. Euphoric appeals the denial of both motions. Having jurisdiction under 28 U.S.C. § 1292(a)(1), we affirm.

I.

Broadway owns a commercial property located at 4128 Broadway in the Westport area of Kansas City, Missouri. For years, a tenant called Ale House occupied the building. Ale House had a checkered history, which included at least one violent incident: in July 2022, a shooting outside the business killed one person and injured six others. By April 2024, Ale House was out of business.

Later that year, Lee learned that the 4128 Broadway property was available. He approached Brody and expressed his interest in leasing the premises. The parties negotiated, and ultimately signed, a purported lease document that provided that "[t]he term 'Term' of this Lease is ten (10) years and such Term shall commence at 12:01 a.m. on the ___ day of October, 2024 'Commencement Date' and shall end at midnight on the 31st day of October, 2034." The document further provided that Broadway was to "use due diligence to give possession of the Premises to [Euphoric] as nearly as possible on or before the Commencement Date of the Term" and that Euphoric was obligated to "deliver to [Broadway]" a $10,000 security deposit "[u]pon the delivery by [Broadway] to [Euphoric] of possession of the Premises or the Commencement Date of the Lease, whichever is earlier."

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

On October 21, 2024, Lee and Brody executed a "Personal Guaranty of Lease." While the purported lease document itself is undated, Brody later testified that he executed that document the same day that he signed the guaranty—i.e., on October 21st.

Two days later, on October 23, 2024, Euphoric tendered Broadway the $10,000 security deposit and Brody informed an employee via text message that Lee had "signed a lease for the building earlier th[at] week" and that the employee was to "give [Lee] access." Also on October 23rd, Lee formed an entity called Ale House West LLC to conduct human resources and hiring operations for Euphoric. Ale House West published a "We're Hiring" notice on social media. That notice identified the hiring business as "Ale House West" and depicted the former Ale House building (complete with Ale House signage). The hiring notice indicated that Ale House West was hiring, among others, "servers/bottle girls."

The notice evidently struck a nerve with some of the owners of neighboring businesses. One such owner, Westport Community Improvement District board member Brett Allred, contacted Brody about the document. Brody arranged a phone call with Allred and Lee, during which Allred apprised Lee of his concerns. Allred noted that the previous tenant operating under the Ale House name had attracted violence to the area and indicated that he was worried Euphoric would be operating the business as a "bottle service nightclub" along the lines of the former Ale House. Brody ultimately demanded that Euphoric drop the Ale House name and asked Euphoric to produce a written business plan confirming that Euphoric would not be operating a nightclub-style venue.

Brody and Lee met at the 4128 Broadway premises on October 25, 2024, and discussed, among other things, Brody's request for a business plan. After the meeting, Brody drove Lee home. Unbeknownst to Brody, Lee recorded their conversation. Brody confirmed that Lee would not be getting the keys to the 4128 premises that day and would not be getting them until he produced a business plan. Lee forgot to stop the recording when he arrived home—the recording captured him

-4-

telling his girlfriend that he did not want the keys to the premises and instead planned to sue Brody and Broadway for ten years' worth of monetary damages.

Lee never provided Brody with a written business plan before suing Broadway. And Broadway never gave Euphoric access to the premises.

In January 2025, Euphoric sued Brody, Broadway, the Westport Community Improvement District, and various Westport Community Improvement District board members, including Allred.[2] It alleged that Broadway and Brody had breached Euphoric and Broadway's purported lease. It also alleged that Brody, Broadway, and the other defendants were members of a racial-discrimination conspiracy seeking to keep black-owned business out of the Westport area, and asserted claims for racial discrimination in violation of various federal civil rights statutes. Euphoric's owner Lee is black; Brody and the other individual defendants are alleged to be white.

In July 2025, roughly six months after Euphoric filed suit, a company called Holy Brunch KC leased the 4128 Broadway premises from Broadway and opened for business after incurring $182,000 in startup costs. Later that month, Euphoric moved for a temporary restraining order and preliminary injunction against Brody and Broadway. That motion asked the district court to order Broadway to turn the 4128 Broadway premises over to Euphoric.

At a hearing on its motion, Euphoric conceded that its request for injunctive relief was tethered only to its breach of contract claim. Euphoric's counsel acknowledged that the district court was "correct" and had "summed it [up] very well" when it stated that the purported "discrimination conspiracy [was] not on the table" as the basis for Euphoric's request for injunctive relief and that the "salient issue" was instead the validity of the parties' purported lease.

---

[2]Euphoric's suit involves others, too. Those parties are not relevant to this appeal.

The district court denied Euphoric's requested temporary restraining order and preliminary injunction. It reasoned that the purported lease's missing commencement date presented a statute of frauds problem for Euphoric and that Euphoric had thus failed to show a likelihood of success on the merits of its breach of contract claim. It also reasoned that Euphoric had not shown a threat of irreparable harm in the absence of injunctive relief.

Euphoric moved for reconsideration. It rehashed many of the same arguments it had made in support of its motion for a preliminary injunction. It also contended that reconsideration was warranted "[i]n light of new evidence, which further substantiate[d] [its] claims of [r]acial [d]iscrimination." In particular, Euphoric directed the district court to a post Allred made on one of his social media accounts. That post—which was set to the Drake song "Mob Ties"—contended that Euphoric's discrimination claims are false and explained that "Westport isn't the mob. It's a group of local business owners working hard to keep this district safe, successful, and thriving for everyone." Euphoric argued that Allred's use of the Drake song, which contains "racial epithets," operated as "a racist dog whistle targeting Plaintiff Euphoric."

The district court denied Euphoric's motion for reconsideration, explaining that the motion was improper because it generally asserted "prior arguments already made or arguments that could have been offered and raised" and that Euphoric's purported new evidence of racial discrimination was not relevant to its preliminary injunction request, which it had conceded was tied only to its breach of contract claim.

Euphoric appeals the district court's denial of both its motion for a preliminary injunction and its motion for reconsideration.

II.

Euphoric first argues that the district court erred when it denied Euphoric's motion for a preliminary injunction. "A district court has broad discretion when ruling on preliminary injunction requests, and we will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of discretion." CDI Energy Servs. v. W. River Pumps, Inc., 567 F.3d 398, 401 (8th Cir. 2009) (citation omitted). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest." Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). "The party seeking injunctive relief bears the burden of proving these factors." CDI Energy Servs., 567 F.3d at 402 (citation omitted). "We review a district court's balancing of the Dataphase factors for an abuse of discretion." Rodgers v. Bryant, 942 F.3d 451, 456 (8th Cir. 2019) (citation omitted).

A.

Of the four preliminary injunction factors we have held that the third—the movant's probability of success on the merits—is "most important." Wildhawk Invs., LLC v. Brava I.P., LLC, 27 F.4th 587, 593 (8th Cir. 2022). This factor "requires a movant to demonstrate at least a 'fair chance of prevailing.'" Id. (citation omitted). Here, the district court concluded that Euphoric had not made this showing. We find no error in that conclusion.

To prevail on a breach of contract claim under Missouri law, the plaintiff must show, among other things, that a valid contract existed. Arnold Crossroads, LLC v. Gander Mountain Co., 471 S.W.3d 721, 723 (Mo. Ct. App. 2015). Leases for a period of greater than one year are invalid unless they satisfy Missouri's statute of frauds, which provides in pertinent part that:

-7-

No action shall be brought . . . upon any contract made for the sale of lands, tenements, hereditaments, or an interest in or concerning them, or any lease thereof, for a longer time than one year . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith . . . .

Mo. Rev. Stat. § 432.010.

A lease agreement satisfies the statute of frauds only if its "essential terms" appear in writing. Franklin Farms, LLC v. N. Am. Auction Co., 554 S.W.3d 497, 500 n.3 (Mo. App. 2018). Such essential terms may not be proved through parol evidence. See Fields v. R.S.C.D.B., Inc., 865 S.W.2d 877, 878 (Mo. Ct. App. 1993) ("In order to satisfy the statute of frauds a writing memorializing an agreement must be complete in and of itself, leaving no essential part to be proved by parol[]."). Under Missouri law, a lease's commencement date is an essential term. See Hanes v. Mid-Am. Petrol., Inc., 577 F. Supp. 637, 643 (W.D. Mo. 1983) ("The lease is entitled a 'One-Year Probationary Dealer Lease' so it is obvious that the length of its term was meant to be one year but there is no indication of when this one year period was to commence. The term of a lease is obviously an essential element and its absence renders the lease invalid."); Frostwood Drugs, Inc. v. Fischer & Frichtel Const. Co., 352 S.W.2d 694, 698 (Mo. 1961) (recognizing that parol evidence could not supply "the 'essential' provision for the commencement of the term of [a] lease").

Because Euphoric and Broadway did not commit the purported lease's commencement date to writing and that date is an essential term, Euphoric has failed to show that its purported lease satisfies the statute of frauds. And because Euphoric has failed to show the purported lease satisfies the statute of frauds, it has failed to show that its lease is valid. We thus discern no error in the district court's finding that Euphoric failed to demonstrate a likelihood of success on the merits of its breach of contract claim. See Arnold Crossroads, LLC, 471 S.W.3d at 723 (listing existence of a valid contract among elements of a breach of contract claim).

None of Euphoric's arguments to the contrary is persuasive. Euphoric generally argues that all elements necessary for the formation of a contract under Missouri law—including offer, acceptance, consideration, and meeting of the minds and mutual assent—were present. But the question is not whether the parties formed a contract. The question is whether that contract is encompassed in a writing that satisfies the statute of frauds. See ARG Int'l, AG v. Olin Corp., 579 F. Supp. 3d 1122, 1126 (E.D. Mo. 2022) ("[T]he question of whether a contract exists and whether there is a writing evidencing the contract that satisfies the Statute of Frauds are two distinct questions."); Tyson Foods, Inc. v. Van Luin Foods USA, Inc., No. 07-0167-CV-W-GAF, 2007 WL 9718282, at *5 (W.D. Mo. Sept. 19, 2007) (rejecting an attempt "to conflate the separate issues of satisfying the statute of frauds and proving an enforceable contract"). Euphoric's arguments to the effect that it had a contract with Broadway simply miss the point.[3]

Further, Euphoric argues that "[t]he commencement date is easily determined from examining the lease itself." This might be a reasonable argument if Euphoric tried to work backwards from two pieces of information the lease document does include: the term's end date and the term's length. Because the lease document states that the "'Term' of th[e] Lease is ten (10) years and such Term . . . shall end at midnight on the 31st day of October, 2034," Euphoric might have argued that the lease supplies a Commencement Date of October 31, 2024. But Euphoric did not make that argument before the district court and has not made that argument here. In fact, at oral argument, when the Court suggested that, based on the ten-year term and the ending date, one might argue that the commencement date was exactly ten years before the ending date, Euphoric expressly disclaimed making that argument. According to Euphoric, arguing that the lease specified an October 31, 2024 commencement date "would have been nonsensical." We consider any argument that the lease by its express terms specifies an October 31, 2024 commencement date

---

[3]Euphoric filed a letter pursuant to Federal Rule of Appellate Procedure 28(j) contending that Broadway conceded the existence of a lease during oral argument. But Broadway never conceded that a lease document satisfying the statute of frauds existed—and again, that is the issue.

waived. See Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, 847 F.3d 594, 598 (8th Cir. 2017) (recognizing that we ordinarily will not consider arguments litigants failed to raise before the district court).

Instead of arguing that the lease commenced October 31, 2024, Euphoric argues that it commenced on October 23, 2024, because that is when Euphoric tendered its security deposit. But that does not make the commencement date "determin[able] from examining the lease itself" as Euphoric claims. Quite the opposite: Euphoric's argument relies on parol proof, which the statute of frauds does not permit. See Fields, 865 S.W.2d at 878.

Euphoric's arguments about its payment of the security deposit are perhaps a nod to an exception that Missouri courts recognize to the statute of frauds: the doctrine of part performance. Under that doctrine, a contract may be enforced irrespective of the statute of frauds where the proponent shows (1) performance of acts that are cogent evidence of the contract's existence, (2) the terms of the contract by clear, cogent, unequivocal, and convincing testimony, and (3) performance occurred in reliance on the contract and the positions of the parties were so changed that applying the statute of frauds "would result in a grossly unjust and deep-seated wrong, constituting fraud or something akin thereto." Kyle v. Fowler, 718 S.W.3d 79, 91 (Mo. Ct. App. 2025) (citation omitted). The part performance exception "is rigidly scrutinized and sparingly invoked." Franklin Farms, 554 S.W.3d at 502.

But Euphoric did not invoke the part performance exception or explain how its rigorous requirements were met in the proceedings before the district court. We thus conclude that Euphoric waived its part performance argument. See Hiland Partners, 847 F.3d at 598. Even if Euphoric had presented this argument to the district court, Euphoric does not adequately brief the issue before us: Euphoric does not explain how the doctrine's exacting requirements are met here. Euphoric's cursory reference to part performance does not persuade us that the district court erred in concluding that Euphoric did not demonstrate a likelihood of success on the merits of its breach of contract claim.

In sum, we agree with the district court that Euphoric failed to demonstrate a likelihood of success on its breach of contract claim, which it conceded was the sole basis for its request for injunctive relief.

B.

We likewise conclude that the district court did not err in finding that Euphoric failed to demonstrate a threat of irreparable harm. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). "To succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" Roudachevski v. All-Am. Care Centers, Inc., 648 F.3d 701, 706 (8th Cir. 2011) (citation omitted).

Euphoric contends that Broadway's refusal to turn over the lease premises constitutes racial discrimination and that racial discrimination is irreparable harm. But Euphoric, having conceded that its request for injunctive relief is grounded only on its breach of contract claim, made no effort to show that it was likely to succeed on its discrimination claims. Because Euphoric made no effort to prove its racial discrimination claims were meritorious, we conclude that the district court did not abuse its discretion in finding that Euphoric had not shown irreparable harm by way of racial discrimination. Cf. Powell v. Noble, 798 F.3d 690, 702 (8th Cir. 2015) (recognizing, in the First Amendment context, that likelihood of success on the merits and irreparable harm are linked, such that a failure to show the former implies the absence of the latter).

Euphoric also argues that it would be irreparably harmed absent an injunction because it tendered the $10,000 security deposit to Broadway and expended time and resources preparing to open a business at 4128 Broadway. These purported harms are compensable through damages and do not support a request for an injunction. See Gen. Motors Corp., 563 F.3d at 319 (explaining that harms

-11-

compensable through money damages are not irreparable). Further, Euphoric cursorily argues that Broadway's refusal to deliver possession of the premises "caused reputational harm, loss of goodwill, and disruption of business plans." This argument is unpersuasive. Euphoric cites nothing in the record supporting its contentions, nor does it explain why the district court erred in rejecting its similar arguments below. Finally, we note that Euphoric waited for over six months after filing its complaint to seek a preliminary injunction. Euphoric surely could have done so promptly, rather than wait for another tenant to occupy the disputed premises. Euphoric's delay strongly supports the district court's finding that Euphoric had not shown a threat of irreparable harm. See Ng v. Bd. of Regents of Univ. of Minn., 64 F.4th 992, 997 (8th Cir. 2023) ("[A]n unreasonable delay in moving for the injunction can undermine a showing of irreparable harm and 'is a sufficient ground to deny a preliminary injunction.'" (citation omitted)).

For these reasons, we hold that the district court did not err in concluding that Euphoric failed to demonstrate a threat of irreparable harm.

C.

Euphoric argues that the district court erred in its balancing of the Dataphase factors. According to Euphoric, the district court "misapplied the Dataphase standard by elevating likelihood of success above irreparable harm, balance of equities, and public interest." We find no abuse of discretion in the manner the district court weighed the Dataphase factors. As an initial matter, we have recognized that the likelihood of success on the merits is the "most important" of these factors. Wildhawk Invs., LLC, 27 F.4th at 593; see also CDI Energy Servs., 567 F.3d at 402 (observing that "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied"). Moreover, the district court also found against Euphoric on the irreparable harm factor, and for the reasons explained above, we discern no error in that conclusion. Euphoric's failure to demonstrate a threat of irreparable harm serves as an adequate and independent justification for denying preliminary injunctive relief. See

Roudachevski, 648 F.3d at 706 ("[W]e need not dwell on [the movant's] likelihood of success on the merits because he has not satisfied the threat of irreparable harm requirement, a necessity in proving the propriety of injunctive relief at this stage."); Grasso Enters., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1040 (8th Cir. 2016) (recognizing that "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction" (citation omitted)). In sum, we reject Euphoric's argument that the district court abused its discretion in its weighing of the Dataphase factors.

III.

Next, Euphoric contends that the district court erred in denying its motion for reconsideration under Federal Rule of Civil Procedure 59(e). "We review a district court's ruling with respect to a Rule 59(e) motion for abuse of discretion." Avon State Bank v. BancInsure, Inc., 787 F.3d 952, 959 (8th Cir. 2015).

Euphoric asserts that reconsideration was warranted in light of newly discovered evidence—specifically, a "series of slides featuring lyrics from Drake's song 'Mob Ties'" that Westport Community Improvement District board member Allred posted on one of his social media accounts. But it is only *material* newly discovered evidence that may justify reconsideration. See Ryan v. Ryan, 889 F.3d 499, 508 (8th Cir. 2018). Allred's post is not that. At best, it goes toward proving claims that were concededly *not* the basis for Euphoric's injunction request. It does not move the ball on any critical issue. It does not fix the statute of frauds problem terminal to Euphoric's one relevant claim—breach of contract. Nor does it show that Euphoric would be irreparably harmed if it cannot enforce a contractual right it likely does not have (and unreasonably waited several months before trying to enforce). We thus conclude the district court did not abuse its discretion in denying Euphoric's motion for reconsideration.

## IV.

For the foregoing reasons, we affirm the district court's denial of Euphoric's motions for a preliminary injunction and reconsideration. We also deny Euphoric's motion "for a prompt decision following oral argument" as moot.

_____